[Civ. No. 22722. Fourth Dist., Div. One. July 14, 1980.]

PETER T. ASUNCION et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
W. C. FINANCIAL, INC., Real Party in Interest.

COUNSEL

Dennis E. Holz, Gregory A. Veach and Joyce A. Wharton for Petitioners.

No appearance for Respondent.

Carmine J. Bua and John C. Lessel for Real Party in Interest.

OPINION

BROWN (Gerald), P. J.—Action in unlawful detainer, filed in municipal court on October 15, 1979, by real party, W. C. Financial, Inc. (Financial) under Code of Civil Procedure section 1161a, subdivision 4, claiming lawful sale to Financial of the real property located at 4404 Logan Avenue, City of San Diego. Defendants Peter and Teresa Asuncion successfully moved in the municipal court for a transfer of the action to superior court on the ground title to real property worth more

than $15,000 was in issue, a subject not within the jurisdiction of the municipal court. Also, the Asuncions on October 24, 1979, filed a complaint against Financial in the superior court alleging fraud, usury, unfair business practices, truth in lending violations, undue influence, and other causes, and requesting title to the property be quieted in their favor, rescission or cancellation of deed, and actual and punitive damages. After transfer of the eviction action to superior court, Financial obtained an order of the superior court retransferring the action to the municipal court. The Asuncions have petitioned this court for a writ of mandate, contending at this stage of the proceedings neither the superior nor the municipal court appears willing to take jurisdiction of the eviction, and further, to permit the eviction action to proceed summarily in the lower court will deprive the Asuncions of their legitimate defenses based on fraud and will irreparably damage them by causing their eviction from their home before their action in the superior court can be resolved. They have owned the subject real property since 1971, and by mid-1979 had an equity in the property exceeding $20,000.

The Asuncions' complaint in the superior court alleges: Financial regularly engages in unlawful, unfair and fraudulent business practices; it locates persons with substantial equity in encumbered residential real property who are in default on their home loans; represents to these homeowners Financial will offer them advice and assistance, and further states the homeowners must act at once to prevent foreclosure, despite the fact homeowners have 90 days to cure a default; offers to loan the homeowners funds to pay off the defaults, with the real property to be security for the loan; and then induces the homeowners to sign legal papers which they do not understand and which obligate the homeowners to repay sums greatly in excess of their present undertakings, charge usurious rates of interest, and, unbeknownst to the homeowners, grant Financial legal title to the property. Since the assumed new obligation is always more burdensome than the existing loans, which the homeowner could not meet, there is a further default on the new agreement, and Financial then evicts the homeowners and converts the equity to its own use.

Here it is alleged the Asuncions in 1971 obtained a purchase money mortgage on the property of $19,800 with monthly payments of $149. In 1978 they executed a second trust deed on an obligation of $3,500, with payments of $64.84. They missed two payments on the second trust deed in June and July 1979. The beneficiary of the second trust

deed filed a notice of default to commence foreclosure on July 12. On July 19 representatives of Financial contacted the Asuncions. The Asuncions signed papers on that date which they were told were necessary to prevent foreclosure on their home. The legal effect of those papers was, among other things, to grant title to the property to Financial, subject to a 45-day option to reacquire the property by executing in Financial's favor a $12,000 promissory note at 18 percent "or more" payable in three years. Financial in return promised to retire a furniture company debt in the sum of $1,126.36 and to pay the second trust deed of approximately $3,500. Financial recorded the grant deed immediately after its execution on July 19. On October 15, 1979, it commenced the unlawful detainer action alleging expiration of the option on September 3, 1979, resulting in ownership of the property in Financial.

The net effect of the parties' dealings is, Financial has loaned the Asuncions about $4,800 for 45 days, in return for real property having an equity in excess of $20,000. It is alleged such loan may be usurious, as well as fraudulent and in violation of a number of laws, both state (unfair business practices, Bus. & Prof. Code, § 17200 et seq.; and usury, Cal. Const., art. XV, § 1, and Deering's Ann. Uncod. Measures 1919-1 (1973 ed.) p. 78; 10 West's Ann. Civ. Code (1954 ed., 1979 Cum. Supp.) foll. § 1916 at p. 39) and federal (truth in lending, 15 U.S.C. § 1601 et seq.).

It is generally recognized the summary unlawful detainer action is not a suitable vehicle to try complicated ownership issues involving assertions of fraud and deceptive practices such as the Asuncions allege here. In holding an unlawful detainer action is not res judicata on the question of fraud in the acquisition of title, *Gonzales* v. *Gem Properties, Inc.* (1974) 37 Cal.App.3d 1029, 1036 [112 Cal.Rptr. 884], pointed out, "The summary nature of unlawful detainer proceedings suggests that, as a practical matter, the likelihood of the defendant's being prepared to litigate the factual issues involved in a fraudulent scheme to deprive him of his property, no matter how diligent defendant is, is not great." Normally, the unlawful detainer action may encompass only a "narrow and sharply focused examination of title" directed at the formal validity of the trustee sale (*Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 255 [142 Cal.Rptr. 414, 572 P.2d 28]). Similarly, in a case which permitted the summary eviction of a gas station franchisee despite multiple asserted defenses of fraud, estoppel, bad faith, and violations of the franchise investment law, the court would not permit consideration of the franchisee's affirmative demands for relief by cross-complaint in the

unlawful detainer, and further pointed out the defendant's right to raise such matter defensively in the eviction action had to be balanced against the interest in preserving the summary nature of eviction. "In causes where the legality of the reason for an eviction may be in issue, the court, in deciding whether to permit affirmative defenses, may balance the interest in preserving the summary nature of the unlawful detainer action against the public policies furthered by protecting the defendant from eviction under the alleged defenses." (*Mobil Oil Corp. v. Handley* (1978) 76 Cal.App.3d 956, 963 [143 Cal.Rptr. 321]; see also *S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719, 724 [131 Cal.Rptr. 761, 552 P.2d 721].) Similarly, another court found antitrust violations were not a proper defense in an unlawful detainer action. (*Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716 [84 Cal.Rptr. 756].)

Although no case appears to hold directly that ownership issues such as are raised here may, or may not, justify slowing the pace of eviction actions, the following cases are helpful in indicating the direction of legal development on this issue. Language in *S.P. Growers Assn.* v. *Rodriguez, supra*, 17 Cal.3d 719, 730, indicates the possibility commercial evictions should be treated differently than residential evictions, permitting affirmative defenses more liberally in the latter situation. (See com. in *Mobil Oil Corp.* v. *Handley, supra*, 76 Cal.App.3d 956, 966.) The affirmative defenses of retaliatory eviction and violation of the Agricultural Labor Relations Act have been permitted in unlawful detainer actions (*Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97]; *Vargas* v. *Municipal Court* (1978) 22 Cal.3d 902 [150 Cal.Rptr. 918, 587 P.2d 714]). Likewise, the defendant may defend by showing use of rent money to make repairs as authorized by statute. (See *Aweeka* v. *Bonds* (1971) 20 Cal.App.3d 278, 282 [97 Cal.Rptr. 650].) In *Vargas, supra*, the court held, to exclude from an eviction action the defense of retaliatory eviction for exercising protected rights under the ALRA, denied the tenant/farmworkers due process, by undermining the essential fairness and basic integrity of that judicial proceeding (*Vargas* v. *Municipal Court, supra*, 22 Cal.3d 902, 915). However, the court left to the municipal court discretion to determine whether and for how long to postpone the eviction proceeding while awaiting the outcome of pending proceedings before the ALRB.

There is some inconsistency between the language of *Vella* v. *Hudgins, supra*, clearly limiting the scope of issues in eviction proceedings

to the narrowest formalities of conveyance of title, and the statement in *Vargas, supra,* "[T]he essential fairness and basic integrity required of a judicial proceeding by due process is clearly violated if only one party to the controversy is permitted to present evidence relating to the matters at issue." (22 Cal.3d at p. 915.) We note, however, the court in *Vella* was not directly faced with the issue of accommodating summary procedures and affirmative defenses, for there the issue was the res judicata effect of an eviction already consummated, in a later action based on fraud. *Vargas,* however, directly faced the issue in the context of a retaliatory eviction for protected exercise of collective bargaining rights, and that court's language applies here as well. ■ We are prepared to hold homeowners cannot be evicted, consistent with due process guaranties, without being permitted to raise the affirmative defenses which if proved would maintain their possession and ownership. Such a procedure would be as unfair as the situation forbidden in *Vargas.* Accordingly, title to the property is inevitably in issue in this unlawful detainer action, and the action is not within the jurisdiction of the municipal court.

As we see it, after the eviction is transferred to the superior court, a number of procedural devices exist to facilitate accommodating the eviction action with the fraud action which the Asuncions separately filed. A possibility, which we understand is frequently utilized in other counties, is for the superior court to stay the eviction proceedings until trial of the fraud action, based on the authority of Code of Civil Procedure section 526 which permits a preliminary injunction to preserve the status quo on such grounds as irreparable injury, multiplicity of legal actions, or unconscionable relative hardship.[1] (See, e.g., *Continental*

---

[1]But see, *Mobil Oil Corp.* v. *Superior Court* (1978) 79 Cal.App.3d 486 [145 Cal.Rptr. 17]. There a service station lessee filed a Los Angeles Superior Court action seeking declaratory relief and affirmative remedies for wrongful termination of franchise. The gist of the relief sought was to maintain the lessee in possession. Then in a different district of that same court, Mobil Oil filed unlawful detainer against the lessee. The lessee obtained from the superior court a stay of the unlawful detainer, which the appellate court vacated on writ of mandate. The court stated the stay was an abuse of discretion because there were no facts presented to the trial court which would justify the granting of a stay. (*Id.* at p. 495.) It is unclear why the court reached this conclusion, but it appears to have relied on a combination of preserving the summary nature of unlawful detainer, and the fact the lessee did not seek a preliminary injunction in his lawsuit against Mobil. (*Id.* at p. 495.) The court also noted the lessee was bringing a lengthy and complex representative action, imposing a heavy burden on the evicting franchisor by delaying his action.

Although it would be premature for us to determine the effect of this case on the Asuncions' right to a stay, we note *Mobil Oil Corp.* involves a commercial, rather than a residential, eviction. Insofar as the preliminary injunction question is concerned, the

*Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 528 [67 Cal.Rptr. 761, 439 P.2d 889], and see generally discussion of subject in 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 47, p. 1496; § 73, pp. 1511-1512.) Bond would be required to obtain such an injunction (Code Civ. Proc., § 529), which could be waived for an indigent litigant (*Conover* v. *Hall* (1974) 11 Cal.3d 842, 851, 853 [114 Cal.Rptr. 642, 523 P.2d 682]). It has been held where foreclosure of a trust deed would moot a claim of right under a deed, and the deed is attacked as a fraudulent conveyance, a preliminary injunction is permitted to prevent foreclosure pending trial (*Weingand* v. *Atlantic Sav. & Loan Assn.* (1970) 1 Cal.3d 806 [83 Cal.Rptr. 650, 464 P.2d 106]). Staying the eviction here is analogous.

An alternate possibility might be consolidation of the actions.

Since this court is not a suitable forum to determine the need for a preliminary injunction nor its terms and conditions, we leave such matters for determination in the trial court. We hold only, the Asuncions are entitled to defend this eviction action based on the claims of fraud and related causes which they have asserted, and accordingly the action necessarily exceeds the jurisdiction of the municipal court and cannot be tried there.

Let a writ of mandate issue, directing the superior court to vacate its order transferring this action to the municipal court, and to retain jurisdiction over the matter so long as substantive issues of ownership remain to be litigated. Petitioners shall have costs in this proceeding. Attorneys' fees incurred in this proceeding may form part of the Asuncions' damages if they prevail in their claim of fraud. (See Civ. Code, § 3333; *Walters* v. *Marler* (1978) 83 Cal.App.3d 1, 30 [147 Cal.Rptr. 655].)

Cologne, J., and Staniforth, J., concurred.

---

Asuncions have not yet had the opportunity to present facts in the trial court warranting either such an injunction or a stay, whereas in *Mobil Oil Corp., supra*, the stay had already been issued on a record the appellate court perceived as inadequate.