[No. AO19092. First Dist., Div. Three. Dec. 14, 1982.]

CUSTOM PARKING, INC., Petitioner, v.
THE SUPERIOR COURT OF MARIN COUNTY, Respondent;
RONALD R. MacANNAN, Real Party in Interest.

**COUNSEL**

James D. Holden and Rudy, Rapoport & Holden for Petitioner.

No appearance for Respondent.

Colin C. Claxon for Real Party in Interest.

**OPINION**

**FEINBERG, J.-**■■ ■■■■ ■  Petitioner, a commercial tenant, seeks writ of mandate to vacate a judgment in unlawful detainer and to require the trial court to hear petitioner's defense of retaliatory eviction.[1] The defense raises a claim that Ronald R. MacAnnan, real party in interest, terminated petitioner's

---

[1] Writ of mandate is appropriate even though there is a right to immediate appeal. Code of Civil Procedure section 1176 permits the *trial judge* to issue a stay pending appeal. Here, the trial judge issued only a temporary stay to permit the filing of this petition. Without a stay pending appeal, appeal is not an adequate remedy for the dispossessed tenant.

tenancy because petitioner's officers and employees refused to perjure themselves in an action involving real party and other tenants of real party.

## Issue

May the defense of retaliatory eviction be raised in an unlawful detainer action brought against a commercial, as opposed to a residential, tenant?

### Procedural Sequence and Pertinent Facts

For more than 15 years, petitioner or its chief executive officer has been the tenant, on a month-to-month basis, of a parking lot property on Bridgeway in Sausalito. Real party has been the landlord since 1976. The parking lot operated by petitioner has served restaurants operated by other tenants of real party. Over the years, real party has become embroiled in several lawsuits with the restaurant tenants. Petitioner's retaliatory eviction defense offers to prove that real party made improper attempts to influence petitioner's employees to testify falsely and then evicted petitioner when the employees refused to do so.

Notice of termination of tenancy was given November 30, 1981. The complaint in unlawful detainer alleged that petitioner did not vacate the premises at the expiration of the 30-day period specified in the notice. Petitioner's answer raised the affirmative defense that:

"From approximately January, 1981 to November 30, 1981, plaintiff attempted to require the employees of Defendant Custom Parking to testify falsely in his favor in connection with three actions in which he is named as the Defendant, specifically, Kingston Properties, Inc. v. Ronald R. MacAnnan, Marin Superior Court No. 102959, Gordon Johnson v. Ronald MacAnnan, Marin Superior Court No. 102632 and Ondine Enterprises, Inc. v. Ronald R. MacAnnan, et al., Marin Superior Court No. 102522. Defendant's employees refused to testify falsely in Plaintiff's favor. In retaliation against Defendant and its employees for the exercise of their legal and constitutional rights and duties to testify truthfully in judicial proceedings, Plaintiff has wrongfully, unlawfully, and maliciously sought to evict Defendant by written notice of termination of tenancy dated November 30, 1981 and continues by this action to seek wrongfully and unlawfully to evict Defendant."

At the unlawful detainer trial the parties stipulated that if the trial court would not accept evidence of the defense, judgment for plaintiff was appropriate. The court rejected the defense and entered judgment for plaintiff. Restitution of possession was temporarily stayed (with a bond required) to permit the filing of a writ petition. The stay was conditioned upon petitioner paying accrued rents and continuing to pay rent during continued possession. Petitioner had been

tendering rents during the pendency of the unlawful detainer action, but because of the pendency of the action those tenders were being refused. This court issued a stay pending determination of this petition.

Petitioner's offer of proof in the trial court recited that petitioner would prove a history of unsuccessful litigation between real party and his restaurant tenants which set the stage for a libel suit against real party. In early 1981, real party told petitioner's executive officer, Lee Messer, that he had heard that petitioner's general manager, Gordon Johnson, was going to testify against real party in the libel suit. Real party ordered Messer to remove Johnson as manager of the restaurant parking lot or the tenancy would be terminated. Johnson was removed and joined the suit against real party.

Lee Messer was deposed in Johnson's lawsuit. After that, real party made veiled threats about what Messer's testimony would do to petitioner's tenancy. After giving notice to petitioner, real party told others that he did so at least in part because petitioner's employees were testifying against him at depositions.

The trial court examined authorities addressing the question of whether a defense of retaliatory eviction could be raised in a commercial unlawful detainer action and rejected evidence of the defense. No ruling was made concerning the sufficiency of the offer of proof to establish the defense.

### Discussion

■ *May the Defense of Retaliatory Eviction be Raised in an Unlawful Detainer Action Brought Against a Commercial, As Opposed to Residential, Tenant?*

In *Barela* v. *Superior Court* (1981) 30 Cal.3d 244 [178 Cal.Rptr. 618, 636 P.2d 582], the California Supreme Court explained the retaliatory eviction defense as follows:

"Unlawful detainer actions are summary proceedings. Only 'issues directly relevant to the ultimate question of possession' may be raised in defense of an unlawful detainer action. (*Green* v. *Superior Court, supra,* 10 Cal.3d 616, 634 [111 Cal.Rptr. 704, 517 P.2d 1168].) Generally counterclaims, cross-complaints and affirmative defenses cannot be considered. (*Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716, 721 . . . .)

"The defense of 'retaliatory eviction' has been firmly ensconced in this state's statutory law and judicial decisions for many years. (See, e.g., [Civ. Code,] § 1942.5; *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d 719, 724 [131 Cal.Rptr. 761, 552 P.2d 721]; *Schweiger* v. *Superior Court, supra,* 3

Cal.3d 507, 517 [90 Cal.Rptr. 729, 476 P.2d 97].) 'It is settled that a landlord may be precluded from evicting a tenant in retaliation for certain kinds of lawful activities of the tenant. As a landlord has no right to possession when he seeks it for such an invalid reason, a tenant may raise the defense of retaliatory eviction in an unlawful detainer proceeding. [Citations.]' (*S.P. Growers, supra,* at p. 724.) The retaliatory eviction doctrine is founded on the premise that '[a] landlord may normally evict a tenant for any reason or for no reason at all, but he may not evict for an improper reason . . . .' (*Id.,* at p. 730.)

"The affirmative defense of retaliatory eviction was first recognized by this court in *Schweiger* v. *Superior Court, supra,* 3 Cal.3d 507. There, the statutory 'repair and deduct' provision ([Civ. Code,] § 1942) was construed so as to include protection against eviction for those tenants who exercised their statutory rights. The same year, the Legislature codified this protection in [Civil Code] section 1942.5. The statute prohibited landlords from evicting a tenant in retaliation for the tenant's exercise of the right to repair and deduct or the tenant's complaint to the authorities about housing code violations.

"In 1976, this court extended the scope of the common law retaliatory eviction defense beyond mere complaints about conditions of tenancy. (*S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d 719, 728.) In *S.P. Growers,* this court held that an eviction in retaliation for the filing of a federal lawsuit charging violations of a federal farm labor statute was improper. The test set down in *S.P. Growers, supra,* is quite simple. A valid defense of retaliatory eviction may be advanced if, on balance, the public policies furthered by protecting a tenant from eviction outweigh the state's interest in ensuring that unlawful detainer proceedings are truly summary. (*Id.,* at pp. 728-729.)" (*Barela* v. *Superior Court, supra,* 30 Cal.3d at 249-250, brackets in original.)

In *Barela* the facts demonstrated that the tenant was evicted in retaliation for her complaint to the police that the landlord had sexually molested her nine-year-old daughter. The *Barela* court concluded that under both statutory and common law the trial court should have considered that defense. Concerning the common law defense, the court stated:

"The important public policy asserted by petitioner is clear. Citizens have a right and a duty to report violations of the law to the authorities. The effective enforcement of this state's criminal laws depends upon the willingness of victims and witnesses to report crime and to participate in the criminal justice process.

"The Legislature has repeatedly demonstrated its concern for victims of crime by adopting programs designed to compensate victims (Gov. Code, §§ 13959-13969, 29631-29636) and to render their contacts with the criminal

justice system less painful (Pen. Code, §§ 13835-13846). One of the goals of these programs is to encourage victims to report crime. 'Unreported crimes occur at more than twice the rate of reported crimes and the reasons people give for not reporting indicate that they are disenchanted with the criminal justice system.' (Pen. Code, § 13835, subd. (e).)

"In light of the strong policy reasons for encouraging the reporting of crime, it is inconceivable that the Legislature could have countenanced the use of the statutorily created summary eviction proceedings to punish a tenant who reported a crime to the police. To hold otherwise would be to create a special class of criminals—those who also happen to be landlords—with a legally sanctioned means of punishing the victims or witnesses of their crime.[8]

". . . . . . . . . . . . . . . . . . . . . .

"The strong public policy interests in preserving the summary nature of the unlawful detainer proceeding will not be significantly impaired if the affirmative defense of retaliatory eviction is allowed here. (*S.P. Growers, supra,* 17 Cal.3d 719, 728-729.) Deciding whether an eviction is in retaliation for a tenant's exercise of basic legal rights presents no great burden for the trial court. This issue involves none of the 'complex and protracted' questions of law that have previously moved the courts to reject certain defenses in unlawful detainer actions. (See *Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716, 726 . . . ; *S.P. Growers, supra,* 17 Cal.3d 719, 729.)

"Some delay may occur if the defense is raised. However, any additional time spent is surely justified by the important public policy furthered by this defense. '[A]s the Supreme Court has noted, "Some delay, of course, is inherent in any fair-minded system of justice. . . . Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done before a man [or woman] is evicted from his [or her] home." ' (*S.P. Growers, supra,* 17 Cal.3d 719, 730, quoting *Pernell* v. *Southall Realty* (1974) 416 U.S. 363, 385 . . . .)" (*Barela* v. *Superior Court, supra,* 30 Cal.3d 244, at 253-255, brackets in original, fn. 9 omitted.)

Footnote 8 of the quoted passage provides:

"In an analogous area of law, this court has held that an employer cannot discharge an employee in retaliation for the employee's exercise of a legally protected right. *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 . . . held that despite the employer's 'generally unlimited right to discharge an employee' (*Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184, 189 . . .), the employer could not discharge an employee because he refused to commit a crime. (*Tameny,* at pp. 172-178. See also

*Glenn* v. *Clearman's Golden Cock Inn* (1961) 192 Cal.App.2d 793 . . . [no right to fire an employee because he had joined a union].) Although no statute specifically prohibited employers from discharging employees for these reasons, the courts found the prohibition implicit in the policies underlying the protected rights. '*Glenn*[,] *Petermann* [and *Tameny*] persuasively instruct us that one may not exercise normally unrestricted power if his reasons for its exercise contravene public policy.' (*Schweiger* v. *Superior Court, supra,* 3 Cal.3d 507, 516.)" *Barela* v. *Superior Court, supra,* 30 Cal.3d at 253, 254, fn. 8, brackets in original.)

On its face, the *Barela* decision suggests that the trial court here should have considered petitioner's retaliatory eviction defense. Public policy favors truthful testimony just as it favors reporting crime. The *Barela* court's citation to *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal. App.2d 184 [344 P.2d 25] (30 Cal.3d at p. 253, fn. 8) confirms the analogy, since in *Petermann* the employee was wrongfully discharged for refusing the employer's instruction that he testify falsely before a legislative committee.

Application of *Barela* is complicated, however, by case law which recognizes and/or applies a distinction between commercial and residential unlawful detainer actions. *Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716 [84 Cal.Rptr. 756], planted the seed for the commercial/residential distinction. There the tenant defended by contending he was being evicted for not acceding to a price-fixing scheme which violated federal and state antitrust laws. The *Union Oil* court concluded that the antitrust claims would have to be prosecuted in a separate lawsuit. No mention was made of the commercial/residential distinction.

Shortly after *Union Oil,* the Supreme Court decided *Schweiger* v. *Superior Court* (1970) 3 Cal.3d 507 [90 Cal.Rptr. 729, 476 P.2d 97], which recognized the defense of retaliatory eviction where a landlord responded to tenants exercising their statutory rights to demand repairs pursuant to Civil Code sections 1941 and 1942. In *Green* v. *Superior Court* (1974) 10 Cal.3d 616 [111 Cal.Rptr. 704, 517 P.2d 1168], the court concluded that a tenant could raise the landlord's breach of an implied warranty of habitability as a defense to an unlawful detainer action. In neither case was a commercial/residential distinction discussed.

In *S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719 [131 Cal.Rptr. 761, 552 P.2d 721], the high court directly addressed the perceived clash between the approach in *Union Oil* and that in decisions such as *Schweiger* and *Green.* At issue in *S.P. Growers* was an agricultural employer's right to evict farmworker tenants from company-owned housing in retaliation for their role in filing suit against the company. The *S.P. Growers* court cited *Union Oil,*

*supra,* for the general rule that counterclaims, cross-complaints, and affirmative defenses are inadmissible in an unlawful detainer action, but cited *Green* and *Schweiger* as exceptions to the general rule. The *S.P. Growers* court balanced the need for summary procedures against the public policies furthered by protecting farmworker tenants from retaliation for litigating their rights and concluded that the latter consideration prevailed. Pertinent to this case, the *S.P. Growers* court distinguished *Union Oil* on two grounds: (1) In *Union Oil* the trial court was being asked to undertake the weighty task of determining whether the company had violated federal antitrust laws, not the less burdensome task of determining the employer's motives for an eviction; and (2) *Union Oil* involved a commercial lease and business rights which could be vindicated in a separate action, not a residential tenant's fundamental right to a home. (17 Cal.3d at 729-730.)

The potential for a commercial/residential distinction has been discussed in at least three appellate court decisions rendered after *S.P. Growers.* In *Mobil Oil Corp.* v. *Handley* (1978) 76 Cal.App.3d 956 [143 Cal.Rptr. 321], the claim was that the tenant was being evicted for refusing to participate in a violation of franchise law. The *Mobil Oil Corp.* court concluded that the defense was correctly stricken because the alleged conduct was that of a third party, not the landlord. In dicta, however, the court did acknowledge the potential for a commercial/residential distinction in unlawful detainer defenses, quoting from *S.P. Growers Assn., supra.*

The commercial/residential distinction was next discussed in *Asuncion* v. *Superior Court* (1980) 108 Cal.App.3d 141 [166 Cal.Rptr. 306]. There the issue was whether the case should be tried in municipal court without the defense of fraud in the transfer of title to a finance company or in superior court where the title issue could be resolved. The *Asuncion* court concluded that the fraud defense should be heard by the superior court in the residential unlawful detainer action. In dicta it noted that "[l]anguage in *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d 719, 730, indicates the possibility commercial evictions should be treated differently than residential evictions, permitting affirmative defenses more liberally in the latter situation." (108 Cal.App.3d, at 145.)

The most recent decision making the commercial/residential distinction used the distinction in a commercial setting to reject a defense that would have been permitted in a residential unlawful detainer action. The issue in *Schulman* v. *Vera* (1980) 108 Cal.App.3d 552 [166 Cal.Rptr. 620], was whether the trial court erred in excluding evidence that the landlord had breached a covenant to repair the roof of a building used for a restaurant. In upholding the trial court, the *Schulman* court made the following observations:

"It is the contention of lessees that the decision in *Green* v. *Superior Court, supra,* 10 Cal.3d 616, changed the well-settled law with respect to commercial leases that a lessee's claim for damages from an alleged breach by the lessor of a covenant to repair could not be set up by the lessee as a defense to an unlawful detainer action by the lessor based on the lessee's nonpayment of rent. Lessees correctly point out that in *Green* the court discarded the independent covenant doctrine as an anachronism of landlord-tenant law developed during the Middle Ages, no longer accurately reflecting the relationship between landlord and tenant. Then, as lessees observe, finding the lessee's obligation to pay rent dependent upon and mutual with the lessor's implied warranty of habitability, the court in *Green* determined that the lessor's breach of the implied warranty was relevant to the issue of the tenant's obligation to pay rent and, thus, the right to possession of the premises. The court then concluded that the lessor's breach of the warranty could be litigated in defense of the lessor's unlawful detainer action. Lessees urge that by parity of reasoning, lessors' alleged breach of their covenant to repair the roof should be litigable in this unlawful detainer proceeding.

"Lessors contend that the express language of the court in *Green* limited the decision to noncommercial, residential leases; that the rationale for the decision was related almost entirely to the relationship between landlord and tenant in leases of urban, residential property; and that the *Green* decision did not and was not intended to alter the well-established law relating to commercial leases. We agree.

"While there is some language in the decision which, taken out of context, might be broad enough to include leases of real property for commercial purposes, the primary rationale for the decision in *Green* was the change in the relationship between landlord and tenant in respect to urban, residential leases, and the court repeatedly restricted its statements and its holding to residential leases.[2] The court stressed the complexity of modern apartment buildings having complicated heating, electrical and plumbing systems hidden from view, the limited tenure of today's urban tenant which frequently will not justify extensive repair efforts, the unavailability to the average urban apartment dweller of financing for major repairs, and the unequal bargaining power of landlord and tenant resulting from the scarcity of adequate housing in urban areas. (10 Cal.3d at pp. 624-625.)

"A lessor's breach of a covenant to repair contained in a commercial lease is a substantially different matter. The parties are more likely to have equal bargaining power, and, more importantly, a commercial tenant will presumably have sufficient interest in the demised premises to make needed repairs and the means to make the needed repairs himself or herself, if necessary, and then sue the lessor for damages.

"It is our conclusion that the *Green* decision is and was intended by the court to be restricted to residential leases. We are strengthened in this view by the fact that several times in the *Green* opinion the court mentioned the decision in *Arnold* v. *Krigbaum, supra,* 169 Cal. 143 [146 P. 423], but failed to overrule that decision. This court, as an intermediate appellate court, is bound to follow precedential decisions of the California Supreme Court. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450 (1962) 455 . . . .)

"We also note two decisions subsequent to the *Green* decision, both of which tend to indicate that *Green* did not effect any change in the law with respect to commercial leases. In distinguishing *Union Oil Co.* v. *Chandler* (1970) 4 Cal.App.3d 716, 726 . . . , from the case before it in relation to preserving the summary nature of unlawful detainer proceedings, the court in *S.P. Growers Assn.* v. *Rodriguez* (1976) 17 Cal.3d 719, 730 . . . , pointed out: 'Moreover, it must be remembered that *Union Oil* involved a commercial lease, while the present case concerns eviction from a residential dwelling.'

"Although no unlawful detainer action was there involved, the court in *Guntert* v. *City of Stockton, supra,* 55 Cal.App.3d at pages 139-140 [126 Cal.Rptr. 690, 127 P.2d 602], summarized the remedies of the lessee for an alleged breach of the implied covenant of quiet enjoyment by the lessor as follows: 'Upon a lessor's breach of lease, the tenant has a choice of remedies. If the broken covenant is a condition precedent in the contract sense, he may elect to move out, cease payment of rent and under some circumstances seek damages. [Citation.] He also has the alternative of continuing under the lease and suing for breach-of-contract damages. [Citations.]'

"Finally, we find significant what was said by the Supreme Court in *Medico-Dental etc. Co.* v. *Horton & Converse, supra,* 21 Cal.2d at pages 420-421 [132 P.2d 457], distinguishing the decision in *Arnold* v. *Krigbaum, supra,* 169 Cal. 143, on the basis that the decision in *Arnold* was predicated upon the necessity of preserving the summary nature of unlawful detainer proceedings (see fn. 1, *ante*). 'The unlawful detainer statutes were . . . enacted to provide an adequate, expeditious and summary procedure for regaining possession of real property wrongfully withheld by a tenant. [Fn. omitted.] The rights and remedies afforded a landlord by the statutory provisions are given in lieu of . . . common law rights and remedies which included the right to enter and expel the tenant by force.' (*Childs* v. *Eltinge* (1973) 29 Cal.App.3d 843, 853 . . . ; see also *Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 255 . . . ; *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d at pp. 729-730; *Green* v. *Superior Court, supra,* 10 Cal.3d at pp. 632-633.) While the cases, probably because of the historical sources of the rules of law, have discussed the issue at hand in terms of dependence or independence of the parties' covenants, what was said by the court in *Medico-Dental* in distinguishing *Arnold* v. *Krigbaum* suggests that the

real issue in determining whether a lessor's breach of covenant may be litigated by a lessee in defense of an unlawful detainer action is whether the need for litigating that matter in the unlawful detainer action is so vital as to overcome the public policy underlying the summary nature of unlawful detainer. Unless we misread it, that is precisely the approach suggested and utilized by the Supreme Court in *S.P. Growers Assn.* v. *Rodriguez, supra,* 17 Cal.3d at pages 729-730. (See also *Union Oil Co.* v. *Chandler, supra,* 4 Cal.App.3d at p. 726.)

"In the case at bench if lessees had been permitted to litigate their claim of damages from lessors' breach of covenant to repair, the summary nature of the unlawful detainer procedure would have been destroyed. There would have been injected into the action issues of whether or not lessees properly notified the lessors of the need for repairs, whether the repairs were in fact needed, whether or not lessors failed to repair within a reasonable time, the nature and extent of the damages resulting from the failure to repair, whether or not lessees took proper measures to mitigate damages, the reasonable cost of making the required repairs, and whether or not lessees had the means to have the repairs made themselves. By contrast, no reason appears why lessees' alternative remedies to recover damages for lessors' alleged breach were inadequate." (*Schulman* v. *Vera, supra,* 108 Cal.App.3d, at 560-563, brackets in original, fn. 1 omitted.)

Footnote 2 of the quoted passage provides: "For example, the court stated: 'In today's urban residential leases, however, land as such plays no comparable role. The typical city dweller, who frequently leases an apartment several stories above the actual plot of land on which an apartment building rests, cannot realistically be viewed as acquiring an interest in the land; rather he has contracted for a place to live.' (10 Cal.3d at p. 623.) And: 'Our holding in this case reflects our belief that the application of contract principles, including the mutual dependency of covenants, is particularly appropriate in dealing with residential leases of urban dwelling units.' (10 Cal.3d at p. 624.) Again: '[W]e agree with the *Hinson* [*Hinson* v. *Delis* (1972) 26 Cal.App.3d 62 . . .] court's determination that modern conditions compel the recognition of a common law implied warranty of habitability in residential leases.' (10 Cal.3d at p. 629.) And again: 'Thus, in keeping with the contemporary trend to analyze urban residential leases under modern contractual principles, we now conclude that the tenant's duty to pay rent is "mutually dependent" upon the landlord's fulfillment of his implied warranty of habitability.' (10 Cal.3d at p. 635.)" (*Schulman* v. *Vera, supra,* 108 Cal.App.3d, at 560-561, fn. 2, brackets in original.)

The sound analysis of *Schulman* reveals that there is some validity to the commercial/residential distinction. The crucial issue in this case, however, is whether that distinction should apply where the defense is not breach of a cove-

nant to repair, but retaliation for the tenant's exercise of his duty to testify truthfully.

It states the obvious to say that there is a strong public policy against intimidating witnesses in a lawsuit from testifying honestly. In this context, the distinction between a commercial and a residential tenancy pales into insignificance.

Would *Barela* have been decided differently had the complaining mother rented a store rather than a residence from the man who allegedly assaulted her daughter? We think not. To preclude the defense in a commercial setting would be "to create a special class of criminals—those who also happen to be [commercial] landlords—with a legally sanctioned means of punishing the victims or witnesses of their crime." (30 Cal.3d at 253.) Here, to preclude the defense would be to create a class of litigants, commercial landlords, with a legally sanctioned means of punishing tenants who testify honestly but adversely to the landlord in a lawsuit between the landlord and third parties. To countenance such a result would be to put a judicial imprimatur upon attempts to impair the truth-finding process of our legal system.

The defense proffered here does not raise complex issues. It raises only the issue of whether the landlord, in attempting to evict, acted by reason of an improper motive. In essence, it is the same defense that the Supreme Court permitted in *Barela*.

If, as the court said in *Barela,* we weigh the public policy in protecting the integrity of the judicial process against the imperatives that impelled the Legislature to enact the summary unlawful detainer proceeding, we hold that here, as in *Barela,* the balance tips in favor of permitting the defense of retaliatory eviction to be asserted.

Let a peremptory writ of mandate issue directing the trial court to vacate its judgment and thereafter proceed in accordance with the views expressed herein.

White, P. J., and Barry-Deal, J., concurred.