847 A.2d 9 (2004)
368 N.J. Super. 456
1266 APARTMENT CORP., Plaintiff-Respondent,
v.
NEW HORIZON DELI, INC., Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 30, 2004.
Decided April 26, 2004.
*10 Mark K. Follender, Little Falls, argued the cause for appellant (Scarinci & Hollenbeck, attorneys, Lyndhurs; Mr. Follender, on the brief).
Joel M. Ellis, Hackensack, argued the cause for respondent (Nashel Kates Nussman Rapone & Ellis, attorneys; Mr. Ellis, on the brief).
Before Judges COBURN, WELLS and C.S. FISHER.
The opinion of the court was delivered by COBURN, J.A.D.
Plaintiff, 1266 Apartment Corp., filed this action in the Special Civil Part, seeking possession of commercial premises it had rented to defendant, New Horizon Deli, Inc. Defendant moved for a transfer of the case to the Law Division pursuant to R. 6:4-1(g). The trial judge denied the motion in an oral decision, tried the case, and entered a judgment of possession for plaintiff.
Defendant filed a notice of appeal that only sought relief from the judgment. However, in addition to briefing the validity of the judgment, it argued that the judge erred in refusing the transfer. The notice of appeal does not address the transfer decision. Since it is clear that it is only the judgment or orders designated in the notice of appeal which are subject to the appeal process and review, Sikes v. Township of Rockaway, 269 N.J.Super. 463, 465-66, 635 A.2d 1004, 1005-06 (App. Div.), aff'd o.b., 138 N.J. 41, 648 A.2d 482 (1994), defendant has no right to our consideration of this issue. Furthermore, no order was entered denying the motion for transfer, and since only orders are appealable, Do-Wop Corp. v. City of Rahway, 168 N.J. 191, 199, 773 A.2d 706, 710 (2001); Heffner v. Jacobson, 100 N.J. 550, 553, 498 A.2d 766, 767-68 (1985), we are obliged to limit our consideration to the question of whether the trial judge erred in entering the judgment of possession. We note that defendant suffered no prejudice from the denial of its transfer motion, and since the judgment of possession was warranted, we affirm it.

I
Defendant became a tenant of plaintiff pursuant to a written lease in 1993. In December 1997, the lease expired and, pursuant to an oral understanding between *11 the parties, defendant became a month-to-month tenant at $2,500 per month.
On December 30, 2000, Russell Dizon, defendant's president and sole shareholder, fell in front of the leased premises, allegedly as a result of an accumulation of snow, which had been inadequately cleared and had turned to ice.
By letter dated May 31, 2001, plaintiff advised defendant that the monthly rent would be increased to $2,750 effective June 1, 2001. However, it appears that defendant only paid the increased rent for the months of January and February 2003. The trial court left unresolved the question of whether the parties had agreed to the rental payments being made at the old rate because resolution of that issue was not required. By January 18, 2002, defendant had received from plaintiff an offer for a three-year lease at $3,000 per month.
Around August 2002, Dizon filed his personal injury complaint against plaintiff seeking compensation for the injuries he suffered in the December 30, 2000, accident.
By letter dated October 15, 2002, defendant's attorney made a counter-proposal for a three-year lease to commence January 1, 2003, at an initial monthly rent of $2,650. Further negotiations were unsuccessful, and on or about December 9, 2002, plaintiff served defendant with a "Notice to Quit and Demand for Possession." Defendant's attorney responded by letter dated December 19, 2002, stating that Dizon was "willing to consider discontinuing his... [personal injury] action if acceptable lease terms can be negotiated." Plaintiff did not press its request for vacation of the premises, and further negotiations ensued during which plaintiff took the position that it would not enter into a lease with defendant so long as Dizon continued to maintain his personal injury action. Although Dizon testified that defendant offered to enter into a lease if the suit was withdrawn, he never testified that plaintiff was willing to accept his offer of less than $3,000 a month rent.
In early February 2003, plaintiff entered into a five-year lease for the premises in question with another entity, E.com Market, at $3,000 per month.
On February 28, 2003, plaintiff served defendant with a second "Notice to Quit and Demand for Possession." When defendant failed to vacate, plaintiff brought this action for eviction in the Special Civil Part.

II
Defendant argues initially that plaintiff breached an implied covenant of good faith and fair dealing and that it subjected defendant to economic duress. The implied covenant of good faith and fair dealing is used to measure a party's performance under a contract. See Wilson v. Amerada Hess Corp., 168 N.J. 236, 244-52, 773 A.2d 1121, 1126 (2001). Thus, a breach of the implied covenant may give rise to a cause of action for damages for breach of contract, see Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. 396, 422-23, 690 A.2d 575, 588 (1997), but the covenant is inapplicable here, despite the agreement for a month-to-month tenancy, because, as shall be discussed below, the landlord is not liable for retaliation, and therefore is not in breach of the covenant. Nor does the doctrine of economic duress provide a defense in these circumstances. This is so because the doctrine is invoked not to compel entry into or maintenance of a contract, but rather to "invalidate an otherwise enforceable contract." Cont'l Bank of Pa. v. Barclay Riding Acad., Inc., 93 N.J. 153, 175, 459 A.2d 1163, 1174, cert. denied, sub nom. Barclay Equestrian Ctr. Inc. v. Cont'l Bank of Pa., 464 U.S. 994, 104 S.Ct. *12 488, 78 L.Ed.2d 684 (1983). Thus, invocation of "economic duress requires `an assent by one party to an improper or wrongful demand by another under circumstances in which the former has little choice but to accede to the demand, i.e., to do what he otherwise would not have done.'" Id. at 176, 459 A.2d at 1175 (quoting Woodside Homes, Inc. v. Morristown, 26 N.J. 529, 544, 141 A.2d 8, 16 (1958)) (internal quotation marks omitted). Here, defendant has not acceded to any demands of plaintiff.
Defendant's primary argument is that the trial court erred in rejecting its equitable defense of retaliatory eviction. By way of relief, defendant demands that we "compel [plaintiff] to extend the lease upon the terms and conditions it was offering subject to the quid pro quo[;] i.e., a five (5) year lease at three thousand dollars ($3,000.00) per month."
In 1970, the Legislature created a defense of retaliatory eviction in summary dispossess proceedings, L. 1970, c. 210; however, the defense was limited to residential tenancies "except owner-occupied premises with not more than two rental units." N.J.S.A. 2A:42-10.13. In E. & E. Newman, Inc. v. Hallock, 116 N.J.Super. 220, 281 A.2d 544 (App.Div.1971), while declining to give the statute retroactive force, we nonetheless held that under principles of equity, "a landlord should not be permitted to evict a [residential] tenant, or to raise his rent, as reprisal for the tenant's exercise of a constitutionally protected right." Id. at 225, 281 A.2d at 546. We did not suggest that this principle should apply to commercial leases.
The American Law Institute confines its treatment of this defense to residential tenancies, stating that it "takes no position at this time as to whether or not the definition of retaliatory action ... should be extended ... to commercial or industrial property." Restatement (Second) of Property: Landlord and Tenant § 14.8 Caveat (1977). On the other hand, it has been recognized that "the doctrine of retaliatory eviction, as it has ... developed by statute and judicial decision, is not necessarily limited to the residential setting." 2 Powell on Real Property § 16B.05[1] (Wolf ed. 2003).
In William C. Cornitius, Inc. v. Wheeler, 276 Or. 747, 556 P.2d 666 (1976), the court held that "[i]n the commercial setting, we are unwilling to hold that the landlord's refusal to renew a lease for motives which are, or may be, improper gives the tenant the right to remain on the premises indefinitely." Id. at 671. In Espenschied v. Mallick, 633 A.2d 388 (D.C.App.1993), the court also refused to extend this defense to a commercial setting, noting that a number of other jurisdictions had reached the same conclusion. Id. at 394, n. 15 (collecting cases).
On the other hand, the defense was extended to the commercial context in Windward Partners v. Delos Santos, 59 Haw. 104, 577 P.2d 326 (1978), which involved eight tenants on "primarily agricultural land" of whom four qualified as residential tenants and four did not. Id. at 328. The landlord, in furtherance of an eventual development plan, petitioned to have the land re-designated from "agricultural" to "urban." The tenants, pursuant to their statutory right to do so, "publicly and vigorously opposed the redesignation and testified against the petition at the [State Land Use] Commission's public hearing. The Commission denied the petition in December, 1974." Ibid. The tenants defended against the resulting dispossess actions with retaliatory eviction. The Hawaii Supreme Court held the defense to be available despite the commercial nature of the tenancies:

*13 We find no reason to deny non-residential tenants the remedy of raising a defense of retaliatory eviction where, as in this instance, the statutory right being exercised ... is equally applicable to non-residential tenants and the exercise of that right by these tenants is likewise to protect their property interests in their tenancies.

[Id. at 334.]
The defense was also made available in a commercial setting in Custom Parking, Inc. v. Superior Court for County of Marin, 138 Cal.App.3d 90, 187 Cal.Rptr. 674 (1982). However, the circumstances were particularly egregious in that case: the landlord attempted to evict the tenant because its employees had refused to perjure themselves in the landlord's favor in separate trials. Id. at 675. The court said:
It states the obvious to say that there is a strong public policy against intimidating witnesses in a lawsuit from testifying honestly. In this context, the distinction between a commercial and a residential tenancy pales into insignificance.

[Id. at 681.]
In Port of Longview v. Int'l Raw Materials, Ltd., 96 Wash.App. 431, 979 P.2d 917 (1999), an eviction was started because the commercial tenant's president wrote a critical letter to a newspaper complaining about health hazards created by another tenant. Taking into account the fact that the landlord was a state entity, the court held
that a commercial tenant of a government landlord may, in some circumstances, assert its right to free speech as an equitable affirmative defense in the unlawful detainer action....
To establish a prima facie case of retaliatory discharge in the unlawful detainer action based upon the exercise of First Amendment rights, [tenant] must demonstrate that (1) the disputed speech addressed a matter of public concern, and (2) the speech was a substantial or motivating factor in the [landlord]'s adverse decision to seek eviction. If [tenant] satisfies this burden, the burden shifts to [landlord], as a government landlord, to prove it would have sought eviction regardless of the employee's protected conduct, i.e., that it had another legal basis for pursuing the unlawful detainer action.

[Id. at 925 (citation omitted).]
The instant case is not at all similar to those cited. Unlike Windward Partners, the defendant is not alleged to have been punished for seeking to protect its property interest in the tenancy, but rather for its employee pursuing an entirely separate cause of action for personal injuries.[1] Unlike Custom Parking, Inc., the defendant is not alleged to have been punished for resisting attempts to have its employees testify falsely, and unlike Port of Longview, the defendant is not alleged to have been punished for attempting to exercise its constitutional right to free speech.
Moreover, none of those cases involved, as this one does, a demand that the landlord be required to enter into a five-year lease at a monthly rental rate ($3,000) which the landlord demanded before the tenant's employee filed his personal injury action, and which the tenant never offered to pay.
*14 The purpose of the summary dispossess statute is to provide the landlord with a prompt remedy for possession. Housing Auth. of Newark v. West, 69 N.J. 293, 300, 354 A.2d 65, 69 (1976); Vineland Shopping Ctr., Inc. v. De Marco, 35 N.J. 459, 462, 173 A.2d 270, 272 (1961). While equitable defenses must be considered, id. at 469, 173 A.2d at 275-76, the Supreme Court of this state has not yet recognized that the doctrine of retaliatory eviction should be considered a defense in a commercial setting. We have observed that "[g]enerally, a new cause of action should be created by legislative enactment or by the Supreme Court rather than by an intermediate appellate court." Proske v. St. Barnabas Med. Ctr., 313 N.J.Super. 311, 316, 712 A.2d 1207, 1210 (App.Div.1998), certif. denied, 158 N.J. 685, 731 A.2d 45 (1999). We perceive recognition of the defense offered in this case as being akin to the creation of a new cause of action and as requiring a significant change in policy. As we said in Coyle v. Englander's, 199 N.J.Super. 212, 226, 488 A.2d 1083, 1090 (App.Div.1985), the "[d]evelopment of policy is for the Supreme Court ... in most instances." In this instance, as noted above, the Legislature addressed the defense of retaliatory eviction, choosing to apply it only in a residential setting. While that enactment does not necessarily foreclose the defense in a commercial setting, the statutory choice increases our reluctance to introduce this defense into our law, particularly where, as here, the landlord's conduct was not especially egregious.
Affirmed.[2]
NOTES
[1] Significantly, in Cloverdale Foods of Minnesota, Inc. v. Pioneer Snacks, 580 N.W.2d 46 (Minn.Ct.App.1998), the court rejected the commercial tenant's defense of retaliatory eviction predicated upon its participation in a federal breach of contract action against the landlord "that was unrelated to the landlord-tenant relationship between the two parties." Id. at 51.
[2] Plaintiff's motion to supplement the record, M-2461-03, on which we had reserved judgment, is hereby dismissed as moot.