Filed 7/12/24  Dey v. Matheka CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| PENNY DEY, as Successor Trustee, etc., | B321403 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 21WCUD00388 |
| v. | |
| ROBERT MATHEKA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  James A. Kaddo, Judge.  Affirmed.

Cal Tenant Law and Jeremy Cook for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

————————————————

## SUMMARY

The jury in a commercial unlawful detainer trial found in favor of the lessor. The judgment awards the lessor possession of the premises and $26,818 in holdover damages. The tenant (defendant) appeals. He contends the trial court erred by refusing to allow him to present evidence on his "main defense" of retaliatory conduct by the lessor. Defendant also contends the lessor's mistaken deposit and subsequent reimbursement to defendant of a rent check, occurring after lessor's 30-day eviction notice, invalidated the notice as a matter of law, and the issue should not have gone to the jury. Defendant claims he had no individual liability and should have been dismissed from the case; that he was prejudiced by admission of irrelevant evidence that inflamed the jury; and the court was biased against him.

We conclude the trial court properly rejected defendant's retaliation defense and none of defendant's other claims has merit. Accordingly, we affirm the judgment.

## FACTS

Plaintiff Sandra Johnson was a trustee of the Martha H. Marsh Revocable Trust, the owner of the property. She died during this litigation, in August 2021, and her sister Penny Dey became the trustee and plaintiff. (At trial, the parties sometimes referred to Ms. Johnson as "the former landlord.")

Ten years earlier, in August 2011, the trust as lessor and Kala Construction, Inc. as tenant entered into a commercial lease of an office and utility yard in the City of La Verne. Robert Matheka signed the lease for the tenant. Mr. Matheka is the defendant. (A default judgment was entered against Kala Construction.)

The lease was for a one-year term beginning September 1, 2011, and ending September 1, 2012, "with self renewing clause or 30 day notice in writing, prior to lease end." Rent was $2,300 per month, with a 6 percent service charge if not paid by the fifth day of

2

each month. "Each year during the term of this lease and any extensions of it, beginning with the second year of the lease, the monthly rental for the twelve months commencing on September 1, 2012, shall be increased" by an amount "to be determined at that time, by approval of both parties." (Underscore omitted.) The rent was never increased.

Plaintiff wanted to sell the property, and defendant knew that plaintiff was trying to do so. In February 2020, plaintiff served a 30-day notice of termination of tenancy, but did not proceed further at that time and continued to receive rent payments from defendant.

A year later, on March 31, 2021, plaintiff served the operative 30-day notice of termination of tenancy, requiring defendant to vacate the premises within 30 days.

Defendant remained in the premises and sent plaintiff a check for May 2021 rent, which plaintiff cashed by mistake. She reimbursed defendant by sending him a check for $2,300 and explaining his payment had been deposited by mistake.

On June 24, 2021, plaintiff filed an unlawful detainer complaint. Plaintiff filed the operative first amended complaint on October 27, 2021, seeking possession, back rent or holdover amounts and attorney fees.

Defendant remained in possession of the premises until the time of trial, at which he represented himself.

Trial began on March 16, 2022, and ended on March 18, 2022, with a general verdict for plaintiff, awarding damages of $26,818. The court entered judgment awarding plaintiff possession of the premises and $26,818 in holdover damages.

Defendant filed a timely appeal from the judgment.

## DISCUSSION

Defendant, now represented by counsel, does not claim a lack of substantial evidence to support the verdict. Instead, he contends

3

that assorted legal errors necessitate reversal as a matter of law. We disagree.

**1.      Retaliatory eviction**

Defendant's principal claim—which he describes as his "main defense"—is that the trial court did not allow him to present evidence or testimony of retaliation.  He asserts this case is "an illegal retaliatory eviction in which the landlord removed the gas lines and shut off the water in retaliation of [defendant] remaining on the premises."  Defendant claims the court erred in concluding the affirmative defense of retaliatory eviction does not apply to a commercial lease.  We find no error in the circumstances of this case.

Under the Civil Code, it is unlawful for a lessor (among other things) to "bring an action to recover possession . . . for the purpose of retaliating against the lessee because the lessee . . . has lawfully and peaceably exercised any rights under the law."  (Civ. Code, § 1942.5, subd. (d).)  Most cases involving retaliatory eviction concern residential leases.  However, in *Custom Parking, Inc. v. Superior Court* (1982) 138 Cal.App.3d 90 (*Custom Parking*), the court held that the defense of retaliatory eviction could be raised in an unlawful detainer action brought against a commercial tenant, where the lessor terminated the tenancy "because [the tenant's] officers and employees refused to perjure themselves in an action involving [the lessor] and other tenants of [the lessor]."  (*Id.* at pp. 91-92; see *id.* at p. 101.)

*Custom Parking* explains the history of the retaliatory eviction defense and the development of the principle that a landlord " ' "may be precluded from evicting a tenant in retaliation for certain kinds of lawful activities," ' " such as reporting a crime to the police or other basic legal rights.  (*Custom Parking, supra,* 138 Cal.App.3d at p. 94; see *id.* at pp. 93-95.)  The court also

4

recognized the issue was complicated "by case law which recognizes and/or applies a distinction between commercial and residential unlawful detainer actions." (*Id.* at p. 96; see *id.* at pp. 96-101.)

Custom Parking allowed the retaliatory eviction defense in that case because it involved a "strong public policy against intimidating witnesses in a lawsuit from testifying honestly," a context where "the distinction between a commercial and a residential tenancy pales into insignificance." (*Custom Parking, supra,* 138 Cal.App.3d at p. 101.) The court applied the principle established in *S.P. Growers Assn. v. Rodriguez* (1976) 17 Cal.3d 719, a residential eviction case: "In evaluating whether defendants have raised a valid defense of retaliatory eviction, we must engage in a balancing process. We must determine whether the public policies furthered by protecting defendants from eviction outweigh the interests in preserving the summary nature of unlawful detainer proceedings." (*Id.* at p. 724; see *id.* at pp. 724, 730 [an eviction in retaliation for the filing of a federal lawsuit charging violations of a federal farm labor statute was improper].)

In short, in a commercial case, the retaliatory eviction defense is applicable, if at all, only where there is a strong public policy that would be furthered by protecting the lessee from eviction: as *Custom Parking* observes, "whether the need for litigating that matter in the unlawful detainer action is so vital as to overcome the public policy underlying the summary nature of unlawful detainer." (*Custom Parking, supra,* 138 Cal.App.3d at p. 100.) Defendant has identified no public policy of any kind that supports protecting him from eviction. Consequently, the trial court did not err in excluding evidence of defendant's purported retaliatory eviction defense.

2. **Other Contentions**

   a. **Receipt of rent after 30-day notice**

Defendant asserts that because plaintiff cashed his May 2021 rent check, his tenancy was reinstated and another 30-day notice

was required before he could be evicted. He contends the court should not have sent this issue to the jury, and instead should have dismissed the case. We disagree.

Neither of the cases defendant cites stands for the proposition that a new 30-day notice was required despite plaintiff's evidence of mistaken cashing of the rent check and return of the funds to defendant. Neither case concerns mistaken deposit of a rent check.

In *Highland Plastics, Inc. v. Enders* (1980) 109 Cal.App.3d Supp. 1, the court states the principle that "if the rent was not accepted by the landlord, there was no waiver of plaintiff's termination of defendant's month-to-month tenancy nor was there an implied withdrawal of the notice of termination." (*Id.* at p. 12.) In *Highland Plastics,* the landlord did not deposit the rent checks, and the evidence was "sufficient to support the implied finding of the trial court that there was no acceptance of the tendered rent during the notice period." (*Id.* at pp. 11-12.) Here, the jury could reasonably find plaintiff's mistaken deposit of the rent and its return to defendant did not amount to receipt or acceptance of the rent. The other case, *Kern Sunset Oil Co. v. Good Roads Oil Co.* (1931) 214 Cal. 435, does not help defendant either. *Kern* involved a lease of oil lands and stands for the proposition that "[t]he acceptance of rent by the landlord from the tenant, after the breach of a condition of the lease, with full knowledge of all the facts, is a waiver of the breach and precludes the landlord from declaring a forfeiture of the lease by reason of said breach." (*Id.* at p. 440.) This case has nothing to do with waiver after breach of a condition of the lease.

Defendant asserts there are "problems with [the mistake] theory" because the return check was sent a month later and "could not be cashed" because it was made out to defendant (and not to his corporation). The jury apparently found no such problems; nor do we.

6

### b.     Defendant's motion to dismiss

Before jury selection, defendant made an oral motion to dismiss himself from the case, arguing that he was not a party to the lease and did not live on the property.  Plaintiff's counsel contended a judgment against defendant was needed to obtain a writ of possession and defendant was refusing to surrender possession as an individual.  The trial court denied defendant's motion.

On appeal, defendant again contends the lease was in the name of a corporate entity which had already defaulted and therefore defendant had no individual liability.  His argument takes up less than a page, cites no authority, and does not address his refusal to surrender possession of the premises.  No error has been demonstrated.

### c.     The claimed evidentiary error

The trial court admitted into evidence an August 13, 2021 e-mail from plaintiff's counsel, responding to an e-mail from a lawyer, Chelsea Cooper, who stated she was filing an ex parte application on defendant's behalf.  The responding email from plaintiff's counsel stated that "due to your client's behavior during the last few months" occupying the property, the owner had died of cancer "without any end of life money as she was selling this property for her hospice care.  Your client knew this full well." (Underscoring omitted.)  Defendant objected on the ground Ms. Cooper was not his lawyer.  At trial, on cross-examination of defendant by plaintiff's counsel, defendant was told to read the e-mail to the jury.  There was also testimony from another witness and comments in plaintiff's closing about the landlord's cancer.  Defendant contends it was an abuse of discretion to allow plaintiff to use the late owner's illness to inflame the jury.

Defendant did not object to this evidence on the ground he now raises on appeal.  However, we need not address the

admissibility of the evidence; even if there were error, defendant has shown no reasonable probability that he would have obtained a more favorable result absent the error.

### d.    Judicial bias

Finally, defendant contends the trial court "express[ed] such a severe and consistent bias throughout the trial in front of the jury" that defendant "could not possibly have a fair trial."  Defendant relies on *Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, where the court reversed the judgment "because the judge committed misconduct so egregious [the plaintiffs] were denied a fair trial."  (*Id.* at p. 1002; see also *id.* at p. 1008 [" '[w]here . . . the appearance of judicial bias and unfairness colors the entire record, we depart from the general rule requiring plaintiff to make an affirmative showing of prejudice' "].)  This is not such a case.

Defendant first recites the trial court's comments at a settlement conference, where the judge spoke to each side separately.  These comments were not made in front of the jury.  Next, defendant criticizes the court for asking defendant why he was refusing to leave, and stating "now you're talking as a lawyer?" when defendant responded that landlords must follow a series of steps to evict a tenant legally.  Defendant claims this exchange "communicated to the jury [the court's] view that [defendant] should have left," and was comparable to the *Haluck* trial court's misconduct in implying unethical or underhanded behavior by counsel in that case.  We disagree.

The exchange just described was not in any way comparable to the egregious misconduct in *Haluck*, which was described at length (*Haluck, supra,* 151 Cal.App.4th at pp. 1003-1007) and included lack of courtesy and decorum, conduct " 'cast[ing] the judicial system itself in a bad light' " (*id.* at pp. 1003-1004), and many examples of "inappropriate conduct that mocked plaintiffs and their testimony and impugned their credibility" (*id.* at p. 1007).

8

Defendant then asserts he "did not get a chance to present his case in the manner he wanted," "he was not able to testify about the checks, or other topics he might want to raise," and the judge "frequently displayed a hostile demeanor." Defendant ends by referring to "derogatory comments coloring the entire record," but identifies no comments made before the jury that can be described as derogatory.

Unlike defendant, we do not see judicial bias against defendant on the record of this trial. Indeed, we see instances where the trial court criticized plaintiff's counsel and raised objections on behalf of defendant. Certainly this is not a case where defendant may be relieved of the affirmative burden of showing prejudice, as in *Haluck*, where " 'the court's comments would cause a reasonable person to doubt the impartiality of the judge or would cause us to lack confidence in the fairness of the proceedings such as would necessitate reversal.' " (*Haluck, supra,* 151 Cal.App.4th at p. 1008.) Defendant has established no such doubt.

## DISPOSITION

The judgment is affirmed. No costs are awarded.


GRIMES, Acting P. J.

WE CONCUR:



WILEY, J.



VIRAMONTES, J.