Filed 4/2/24  Homeward Opportunities Fund I Trust 2019-2 v. Taptelis
Opinion following rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HOMEWARD OPPORTUNITIES FUND I TRUST 2019-2, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ILIAS LOUIE TAPTELIS, <br><br> Defendant and Appellant. | H049791 <br> (Santa Clara County <br> Super. Ct. No. 21CV378676) |

Upon purchasing property in a nonjudicial foreclosure sale under a borrower's deed of trust, the new owner must perfect title under the sale before seeking to evict the trustor/borrower.  (Code Civ. Proc., § 1161a, subd. (b)(3); *Dr. Leevil, LLC v. Westlake Health Care Center* (2018) 6 Cal.5th 474 (*Dr. Leevil*).)[1]  The parties dispute whether plaintiff Homeward Opportunities Fund I Trust 2019-2 (Homeward) did so.

Homeward was the beneficiary under a deed of trust executed by defendant-borrower Ilias Louie Taptelis.  After Taptelis filed a preemptive wrongful foreclosure lawsuit alleging, among other claims, material violation of the Homeowner Bill of Rights (HBOR)[2] and recorded a lis pendens, though without a proof of service, Homeward

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] Until a trustee's deed has been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of specified statutory provisions.  (Civ.

purchased the property in a nonjudicial foreclosure sale. After the trustee's deed was recorded, Homeward served Taptelis with notice to quit the premises and obtained a judgment of unlawful detainer against him without expunging the lis pendens or resolving the underlying litigation.

We conclude that in this case recordation of the trustee's deed sufficed to perfect Homeward's title under the sale. Because we reject Taptelis's various other challenges to the judgment, we affirm.

## I. BACKGROUND

### A. *The Nonjudicial Foreclosure and the Wrongful Foreclosure Suit*

Taptelis borrowed $1.24 million from Recovco Mortgage Management, LLC (Recovco) to buy property located at Fennel Court. To secure the loan, he executed a Deed of Trust by which he conveyed the Fennel Court property to Stewart Title of California, Inc. (Stewart Title) as trustee with power of sale, to hold for the benefit of Recovco's designee, Mortgage Electronic Registration Systems, Inc. (MERS). The deed of trust was recorded in June 2019.

Taptelis defaulted on the loan later in 2019. After his default, these documents concerning the Fennel Court property were recorded in Santa Clara County: (1) In April 2020, MERS executed an assignment of deed of trust, through which it purported to assign its beneficial interest under the deed of trust to Homeward;[3] (2) in May 2020, Specialized Loan Servicing LLC (SLS), acting as attorney-in-fact for Homeward, executed a substitution of trustee, through which Homeward purported to substitute

---

Code, § 2924, subd. (a).) After a trustee's deed has been recorded, a material violation of the same statutes gives rise to a claim for actual economic damages. (Civ. Code, § 2924, subd. (b).)

[3] On appeal, Taptelis disputes whether several of the recorded documents had their intended effect.

Quality Loan Service Corporation (Quality) for Stewart Title as the trustee; and (3) in June 2020, Quality issued a notice of default and election to sell under the deed of trust.

As stated in the notice of default, as of June 2020, Taptelis needed to pay $87,221.09 to cure the default. Quality appended a California declaration of compliance to the notice of default, representing that the mortgage servicer had exercised due diligence to contact Taptelis at least 30 days earlier to assess his financial situation and explore options to avoid foreclosure.

Quality's notice of trustee's sale, scheduled for December 4, 2020, was recorded in October 2020.

Two weeks later, Taptelis filed a civil action challenging the foreclosure and naming various involved entities as defendants, including Homeward. In the complaint, Taptelis described the documents that had been recorded to date.

Taptelis alleged nine causes of action: (1) violation of the HBOR by filing the notice of default while Taptelis had a loan modification application pending, that is, "dual-tracking"; (2) violation of Civil Code section 2923.5, subdivision (b), by SLS and Quality for failing to provide certain information before filing the notice of default; (3) violation of Civil Code section 2924.17 by SLS and Quality by submitting a declaration in support of the notice of default that was not based on reliable and competent evidence; (4) violation of the implied covenant of good faith and fair dealing by dual-tracking; (5) negligence in servicing the loan in connection with the alleged dual-tracking; (6) wrongful foreclosure flowing from the foregoing violations of the HBOR and Civil Code; (7) cancelation of the assignment, substitution, notice of default, and notice of trustee's sale on the ground that they were not based on reliable and competent evidence and that SLS and Quality improperly filed the notice of default; (8) violation of the Unfair Competition Law arising out of the foregoing causes of action; and (9) quiet title.

3

Two days before the foreclosure sale, Taptelis had a lis pendens recorded in connection with the wrongful foreclosure action. The recorded lis pendens did not include a proof of service. In 2022, after Homeward moved to expunge, Taptelis recorded a withdrawal of the lis pendens.

On December 11, 2020, Santa Clara County recorded Quality's trustee's deed upon sale. As set forth therein, Quality sold the Fennel Court property to Homeward pursuant to the deed of trust through a public auction held on December 4, 2020.

**B.** *The Notice to Quit and this Action*

On March 16, 2021, Homeward served notice to quit on Taptelis and all unknown occupants, tenants, and subtenants at the Fennel Court property. Taptelis did not vacate the property, so Homeward filed the present unlawful detainer suit.

On March 24, 2021, Homeward filed its verified unlimited civil unlawful detainer complaint. Homeward alleged that it had obtained ownership of the property pursuant to a nonjudicial foreclosure on December 4, 2020. Homeward sought to wrest possession of the property from Taptelis and any other unnamed occupants, tenants, and subtenants.

The next month, in the wrongful foreclosure case, Taptelis filed an ex parte application shortening time for a hearing on a motion to consolidate that wrongful foreclosure action with this unlawful detainer action or, in the alternative, a motion to stay this action. Taptelis had yet to file any motion to consolidate, and the trial court summarily denied the ex parte.

Taptelis answered the unlawful detainer complaint in June 2021. In September 2021, Taptelis submitted for filing in the wrongful foreclosure case a motion to consolidate the two cases or to stay this unlawful detainer case. Later in September, Taptelis filed an ex parte application requesting the unlawful detainer case be stayed. In the application, Taptelis noted that his duly noticed motion in the wrongful foreclosure case would otherwise not be heard until after the unlawful detainer trial. The court denied the ex parte application without prejudice, with instructions to file "[t]he

4

request . . . by noticed motion in the appropriate civil action." The court later continued the unlawful detainer trial for two weeks, to October 27, 2021.

On October 18, 2021, Taptelis filed an ex parte application in the wrongful foreclosure case seeking a stay—pending resolution of his motion to consolidate—of the trial in this unlawful detainer case. The trial court summarily denied the ex parte application.

The day of the unlawful detainer trial, asked for his time estimate, Taptelis orally advised the court that he "would be looking to request a stay." Taptelis stated that his motion to consolidate had not been calendared in the wrongful foreclosure case.[4] The trial court acknowledged that the "motion to stay proceedings . . . would be within [its] jurisdiction" and understood Taptelis's request as "a motion to continue, so that the other court can rule on the motion to consolidate." Reasoning that an unlawful detainer is "a summary proceeding" that "can't keep getting continued and wait for the other case," the trial court denied the request because "[t]his case has to go forward."

At the bench trial, over Taptelis's objections, Homeward relied on judicial notice of recorded documents—the deed of trust, assignment, substitution, notice of default, notice of trustee's sale, and trustee's deed—to establish that it had perfected title to the property by way of a nonjudicial foreclosure sale conducted in compliance with section 2924 of the Civil Code. Homeward called one witness, a process server, to establish that it had served a notice to quit.

In his defense, Taptelis confirmed he secured his loan from Recovco with a deed of trust but testified that he never received notice that he had any new creditor and that he had submitted a loan modification application to his loan servicer. The trial court then sustained Homeward's objection that issues with Taptelis's loan modification application were beyond the scope of the unlawful detainer. The trial court then sustained relevance

---

[4] Apparently due to issues stemming from the pandemic, Taptelis was not issued a hearing date in the wrongful foreclosure action until after the unlawful detainer trial.

objections to testimony from Taptelis regarding his pending wrongful foreclosure case and recorded lis pendens. Taptelis did not offer other evidence.

On December 29, 2021, the trial court issued a written ruling. Taking "judicial notice of the recorded documents, their legally operative language, the names of the parties, the identification of the document, [and] the recordation date," the court concluded that Homeward acquired the property "through foreclosure proceedings, which were (by benefit of a rebuttable presumption) in accordance with applicable law, namely Civil Code [section] 2924." Moreover, the trial court found that "a three[-]day notice to quit was properly served" based on the testimony and documents introduced through the process server.

In January 2022, Taptelis filed both a limited civil notice of appeal and an ex parte application for stay of judgment or writ of possession pending the appeal. The trial court entered judgment on January 31, 2022, and the writ of possession issued on February 1, 2022.

Taptelis unsuccessfully petitioned this court for a peremptory writ staying the judgment and the writ of possession.

Taptelis timely filed an amended unlimited civil notice of appeal challenging the judgment.

We issued an opinion reversing the judgment on October 12, 2023, but subsequently granted Homeward's petition for rehearing and requested supplemental briefing.

## II.    DISCUSSION

In a postforeclosure unlawful detainer action, the plaintiff must show (1) "the property has been sold in accordance with [s]ection 2924 of the Civil Code" (2) "under a power of sale contained in a deed of trust executed by [the] person, or a person under whom such person claims," (3) holding over in possession after the service of a notice to quit, and (4) "the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3).)

6

Taptelis's appeal focuses on two elements: (1) whether the property was sold in accordance with section 2924 of the Civil Code, and (2) whether Homeward duly perfected title under the sale. The former is addressed through Taptelis's challenges to the trial court's consideration of judicially noticed public records. The latter through Taptelis's contention that Homeward did not perfect title due to pending litigation. After addressing certain threshold arguments, we will reject these core challenges.

## A. *Homeward's Claim of Mootness*

We reject Homeward's contention that its sale of the property to a third party moots Taptelis's appeal.[5]

" 'Generally, courts decide only "actual controversies" which will result in a judgment that offers relief to the parties.' [Citation.] 'Thus, appellate courts as a rule will not render opinions on moot questions . . . .' [Citation.] 'A case becomes moot when a court ruling can have no practical impact or cannot provide the parties with effective relief.' [Citation.] . . . But, where a court can afford the party at least some relief, even if not all the relief originally requested, the court should not dismiss a case as moot." (*City of Cerritos v. State of California* (2015) 239 Cal.App.4th 1020, 1031.)

As Taptelis notes, even if he can no longer regain possession of the property, his appeal is not moot because a reversal could entitle him to restitution. Upon reversal or modification of a judgment, "the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or order, so far as such restitution is consistent with rights of third parties and may direct the entry of

---

[5] We grant Homeward's request for judicial notice of (1) the grant deed recorded on November 8, 2022; (2) the withdrawal of the December 2, 2020 notice of pendency of action recorded on May 31, 2022; and (3) the order expunging a lis pendens recorded on November 15, 2022. We also note that the parties agree that Homeward has at least purported to transfer the property to a third party—we assume for mootness purposes that the transfer is effective. We deny Taptelis's request for judicial notice of an excerpt of an appellate brief submitted to this court in a separate writ proceeding between the parties because the excerpt is irrelevant to the issues reached herein.

a money judgment sufficient to compensate for property or rights not restored." (§ 908; see also *Shapell Socal Rental Properties, LLC v. Chico's FAS, Inc.* (2022) 85 Cal.App.5th 198, 209–210 (*Shapell*).)

In *Shapell*, for example, the prevailing landlord in a commercial unlawful detainer action argued that the tenant's appeal was moot because the tenant could not regain possession of the leased premises. (*Shapell*, *supra*, 85 Cal.App.5th at p. 209.) The court explained that restitution "may include restoring an evicted tenant to possession of the leased premises," but that " ' "appellate courts are not apt to invoke [the statute] to reinstate a tenant's right to possession after years have gone by" ' " and thus, " ' "for all practical purposes, the only appropriate remedy for vacating tenants who prevail on appeal, but who failed to obtain a stay, may be a monetary award 'sufficient to compensate [the tenant] for the property rights not restored.' " ' " (*Id.* at pp. 210–211, italics omitted.)

Although *Shapell* concerned a landlord-tenant unlawful detainer proceeding rather than a postforeclosure proceeding, this is a distinction without a difference as to mootness. Whatever the basis for the unlawful detainer action, the point remains that a monetary award of restitution may be available to a prevailing defendant on appeal as an alternative to the restoration of possessory rights.

In its reply in support of its motion to dismiss, Homeward implicitly concedes that section 908 creates a right to monetary restitution but argues that restitution would be unwarranted here. Homeward argues both that Taptelis should litigate any claim for restitution he may have in the wrongful foreclosure case and that Taptelis cannot obtain restitution even if he prevails on appeal because he lived " 'rent-free' " on the property from December 2020 to February 2022. But Homeward articulates no theory by which Taptelis could abandon his appeal from the unlawful detainer judgment and yet seek restitution—the purpose of which would be to return him "so far as possible to the position[] [he] occupied before the enforcement of or execution on [that] judgment."

8

(§ 908.) The relief, if any, available in equity may turn on the nature of any error the trial court made in adjudicating the parties' respective rights to possession and the relevance of Taptelis's wrongful foreclosure claims to that adjudication. Thus, Homeward's reply raises only downstream equitable issues to be addressed, if at all, on remand if Taptelis prevails on appeal, not an inability to afford Taptelis relief if his appeal proves meritorious.

**B.** *Compulsory Cross-claim*

For the first time on appeal, Taptelis contends that Homeward was required to pursue its unlawful detainer claim as a cross-claim in the wrongful foreclosure action and that, by failing to do so, Homeward lost standing to pursue the claim and the trial court lost jurisdiction to adjudicate it. Exercising our discretion to address a question of law on undisputed facts (see *People v. Runyan* (2012) 54 Cal.4th 849, 859, fn. 3), we reject Taptelis's argument on the merits.

Generally, if a defendant "fails to allege in a cross-complaint any related cause of action which (at the time of serving his answer to the complaint) he has against the plaintiff," the defendant may not later sue the plaintiff for "the related cause of action not pleaded." (§ 426.30, subd. (a).) But this provision, like the article ("Compulsory Cross-Complaints") that includes it, "applies only to civil actions and does not apply to special proceedings." (§ 426.60, subd. (a).) Unlawful detainer proceedings are special proceedings. (See *Tide Water Associated Oil Co. v. Superior Court* (1955) 43 Cal.2d 815, 824 (*Tide Water*); § 1161a [found in pt. 3 of the code, which addresses "special proceedings" of a civil nature]; *Shapell*, *supra*, 85 Cal.App.5th at p. 215.)

Taptelis asserts that the statutory exception for special proceedings inures only to the benefit of an unlawful detainer defendant, and only to the detriment of a plaintiff seeking possession: In his reading, an unlawful detainer defendant need not, and cannot, file cross-claims in an unlawful detainer action but a potential unlawful detainer plaintiff must file its unlawful detainer claim as a cross-claim in a related wrongful foreclosure

9

action. His argument does not fit the plain language of the statute, and he is admittedly unable to identify authority supporting his interpretation. We note as well that requiring prospective unlawful detainer plaintiffs to bring their claims as compulsory cross-claims in civil actions would frustrate the clear legislative purpose of a summary proceeding to obtain possession. (See *Tide Water*, *supra*, 43 Cal.2d at p. 824.)

Even if section 426.30 could apply to require an unlawful detainer claim to be brought as a cross-claim, by its terms it applies only to claims against the plaintiff that have accrued by the time the defendant serves its answer. Homeward answered the wrongful foreclosure complaint on December 15, 2020.[6] Homeward served the notice to quit three months later, in March 2021. Homeward had no statutory right to file an unlawful detainer claim against Taptelis, if at all, until he "h[eld] over and continue[d] in possession of" the property "after a three-day written notice to quit the property ha[d] been served upon" him. (§ 1161a, subd. (b).) Even where it applies, section 426.30 does not require a party to file a claim prematurely. Nor would we interpret section 426.30 to enable Taptelis, by filing a preemptive wrongful foreclosure lawsuit, to compel Homeward to race to complete the prelitigation steps necessary to initiate an unlawful detainer action to avoid a forfeiture.

## C. *Sufficiency of the Judicially Noticed Record to Show Compliance with Civil Code Section 2924*

Relying on judicial notice of the legal effect of the recorded documents, the trial court ruled that Homeward acquired title to the property through properly conducted nonjudicial foreclosure proceedings. Taptelis contends that it was substantively and procedurally improper for the trial court to take judicial notice of the recorded documents to prove the transfer of authority to foreclose. We reject Taptelis's substantive

---

[6] We grant Taptelis's unopposed request for judicial notice of the date on which Homeward filed its answer in the wrongful foreclosure case. (See Evid. Code, § 452, subds. (d), (h).)

10

contentions on the merits, concluding that the recorded documents were enough for the trial court to determine that the property was sold at a nonjudicial foreclosure sale held in compliance with Civil Code section 2924 for the purposes of section 1161a, subdivision (b)(3). Assuming that the procedure the trial court employed to grant judicial notice was improper, we conclude that the procedural error was not prejudicial.

### 1. *The Nonjudicial Foreclosure Process*

When a borrower defaults, the beneficiary under a deed of trust may declare a default and proceed with a nonjudicial foreclosure sale. (Civ. Code, § 2924.) After the trustee records the notice of default and election to sell and has waited approximately three calendar months before proceeding with the sale (Civ. Code, § 2924, subd. (a)(2)-(4)), a notice of sale must be published, posted, mailed and recorded at least 20 days before the sale (Civ. Code, § 2924f), a public auction to the highest bidder (Civ. Code, § 2924g, subd. (a)). (See generally *Royal Thrift & Loan Co. v. County Escrow, Inc.* (2004) 123 Cal.App.4th 24, 32 (*Royal Thrift*).) Under Civil Code section 2924h, subdivision (c) the trustee's sale is " 'deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within [21] calendar days after the sale . . . .' " (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 481, italics omitted.)

A recital in the trustee's deed "of compliance with all requirements" regarding service of the notice of default "shall constitute prima facie evidence of compliance . . . and conclusive evidence thereof in favor of bona fide purchasers . . . for value and without notice." (Civ. Code, § 2924, subd. (c); see also *Royal Thrift*, *supra*, 123 Cal.App.4th at p. 32.)

### 2. *Legal Principles Regarding Judicial Notice of Recorded Documents*

In general, judicial notice of the existence and facial contents of recorded documents is proper, but courts may not take judicial notice of the truth of facts asserted within judicially noticed documents. (See *Yvanova v. New Century Mortgage Corp.*

11

(2016) 62 Cal.4th 919, 924, fn. 1 (*Yvanova*); *Julian Volunteer Fire Co. Assn. v. Julian-Cuyamaca Fire Protection Dist.* (2021) 62 Cal.App.5th 583, 600 (*Julian*).) Appellate courts have distinguished between "the truth of specific factual representations within a document" and "facts that can be deduced, and/or clearly derived from, [the] legal effect" of "an official document," such as "the names and dates contained in the document, and the legal consequences of the document." (*Julian*, *supra*, 62 Cal.App.5th at p. 600; see also *Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 265 (*Fontenot*), disapproved on other grounds by *Yvanova*, *supra*, 62 Cal.4th at p. 939, fn. 13 ["a court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity"]; *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1374–1375 (*Herrera*); *Poseidon Development, Inc. v. Woodland Lane Estates, LLC* (2007) 152 Cal.App.4th 1106, 1117–1118 (*Poseidon*).) "Moreover, whether the fact derives from the legal effect of a document or from a statement within the document, the fact may be judicially noticed where . . . the fact is not reasonably subject to dispute." (*Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 754 (*Scott*).)

For example, the *Fontenot* court held that it was proper to take judicial notice that MERS was the beneficiary under a deed of trust based on MERS's designation as such on the judicially noticed deed of trust. (*Fontenot*, *supra*, 198 Cal.App.4th at p. 266.) Similarly, the *Poseidon* court held that it was proper to take judicial notice of the fact that Poseidon no longer held its beneficial interest under a deed of trust based on a judicially noticed assignment of its beneficial interest where Poseidon did not dispute the validity of the assignment. (*Poseidon*, *supra*, 152 Cal.App.4th at p. 1118.)

On the other hand, the *Herrera* court held that the trial court erred in taking judicial notice of the assignment of a beneficial interest under a deed of trust to identify

the beneficiary in tandem with a substitution of trustee showing that the beneficiary had put the foreclosing trustee in place. (*Herrera*, *supra*, 196 Cal.App.4th at pp. 1374–1375.) The *Herrera* court reasoned that the representation in the assignment that the putative assignor had any interest to assign was disputable hearsay unsupported by any evidence. (*Id.* at p. 1375.) Similarly, the substitution's recital stating that the beneficiary remained " 'the present beneficiary under' the . . . deed of trust" was disputed hearsay. (*Ibid.*) Thus, *Herrera* held that judicial notice of the legal effect of the documents was improper "in that case, because the vitality of the assignment was reasonably subject to dispute without independent proof that the party assigning the interest had the authority to do so." (*Scott*, *supra*, 214 Cal.App.4th at p. 756, italics omitted.)

### 3. *Whether Judicial Notice of the Legally Operative Language in the Recorded Documents Established Compliance with Section 2924*

Taptelis contends that judicial notice of the recorded documents cannot establish that the proper entities foreclosed on the property because some of the documents were invalid, lacking legal effect. We conclude instead that the trial court properly took judicial notice of the legally operative language in the recorded documents and inferred their legal effect from that language. (See *Julian*, *supra*, 62 Cal.App.5th at p. 600.)

To begin, there is no dispute that the trial court properly considered the deed of trust, which reflects that Taptelis was the borrower, Recovco was the lender, MERS was the original beneficiary, and Stewart Title was the original trustee. By its terms, the deed of trust made "MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS" the beneficiary of the deed of trust. The deed of trust included the recital that "Borrower understands and agrees that MERS holds only legal title" but "has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the [p]roperty." The deed of trust also grants "Lender" the right to substitute the trustee.

13

By June 18, 2020, when the notice of default was executed, Quality was acting as trustee on behalf of Homeward, as the beneficiary.  Taptelis challenges the use of judicial notice of the assignment and substitution to establish their authority to act in those roles.  But we conclude that the legal effect of the assignment and the substitution was within the proper scope of judicial notice.

Taptelis contends that the assignment has no judicially noticeable legal effect because (1) it does not mention transfer of the underlying note; (2) the court would need to examine the agreement between MERS and Recovco to determine whether MERS held the note before assigning its beneficial interest to Homeward; and (3) it does not have an attestation that satisfies section 2015.5.  As explained below, we reject these contentions.

First, we understand Taptelis to be arguing that Homeward could not take MERS's beneficial interest in the deed of trust without holding the underlying promissory note.  That line of argument has been repeatedly rejected in the nonjudicial foreclosure context.  (See *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 440–442 (*Debrunner*); *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 511–512 (*Shuster*); *Orcilla v. Big Sur, Inc.* (2016) 244 Cal.App.4th 982, 1004 (*Orcilla*); see also Civ. Code, § 2924, subd. (a)(1), (6) [allowing "trustee, mortgagee, or beneficiary, or any of their authorized agents" to file notice of default]; *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155 [" 'trustee, mortgagee, or beneficiary, or any of their authorized agents' may initiate the foreclosure process"].)  Moreover, Taptelis cites no authority adopting his position in this context.  (Cf. *Kelley v. Upshaw* (1952) 39 Cal.2d 179, 191–192 [where chattel mortgage was security for a promissory note and holder of the promissory note assigned the mortgage without assigning the note, assignment of the mortgage was a legal nullity].)  We follow *Debrunner*, *Shuster*, and *Orcilla*.  Even if the lender still held the note, MERS, which acted as the lender's "nominee" or agent, assigned its interest as the beneficiary under the deed of trust to Homeward.  (See *Fontenot*, *supra*, 198 Cal.App.4th at pp. 270–271 [as

14

"nominee" or agent, MERS could transfer the lender's interest in the note to a third party, subject only to any constraints in the agency agreement].) As a result, the court did not need to examine the agreement between MERS and Recovco to determine whether MERS held the note prior to assigning its beneficial interest to Homeward.

Second, Taptelis argues that the assignment was not properly before the court because the notarized copy lacks a section 2015.5 attestation that "certifies under penalty of perjury under the laws of the State of California" that the recitals are "true and correct." (See § 2015.5 [requiring the attestation when "unsworn statement, declaration, verification, or certificate" is offered in lieu of "sworn statement, declaration, verification, certificate, oath, or affidavit"].) Taptelis neither articulates why section 2015.5 applies to an assignment nor offers pertinent authority: the lone case he cites involves the admissibility of summary judgment declarations lacking the section 2015.5 attestation. (See *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 605–606, 618–619.)[7] Accordingly, we treat the contention as forfeit. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146, 153 (*United Grand*) [appellant must supply some cogent argument supported by legal analysis].)

Having rejected Taptelis's contentions regarding the assignment, we conclude that the trial court could properly take judicial notice of the legally operative language in the assignment to conclude that it had the legal effect of assigning the beneficial interest in the deed of trust from MERS to Homeward. (See *Julian*, *supra*, 62 Cal.App.5th at p. 600.)

As for the substitution of trustee, Taptelis contends that it has no judicially noticeable legal effect because (1) the assignment being invalid, Homeward produced no

_____

[7] Taptelis's reply brief lacked any response to Homeward's arguments that (1) neither the assignment nor the substitution needed to be notarized and (2) Taptelis's argument was too cursory to preserve the issue.

15

evidence of authority to effect a substitution; (2) the substitution was executed by SLS as Homeward's attorney-in-fact, without evidence of SLS's authority to act in that capacity; and (3) the substitution was notarized without a section 2015.5 attestation.

As to the first and third contentions, we reject them consistent with our discussion of Taptelis's challenges to the assignment.

As to the second contention, we reject for lack of standing Taptelis's contention that Homeward was required to prove that it had authorized SLS to execute the substitution on its behalf. Borrowers have standing to challenge pre-foreclosure assignments to the extent the assignments are void, and not merely voidable. (See *Yvanova*, *supra*, 62 Cal.4th at pp. 939–940.) In that context, courts have held that allegations of robo-signing—documents signed by employees without authority or fraudulently signed by unnamed entities in the name of another—render assignments voidable, rather than void. (See *Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 806, 819–820; *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017) 8 Cal.App.5th 23, 46; see also *Yvanova*, *supra*, 62 Cal.4th at p. 930 [defining a "voidable transaction . . . '[as] one where one or more parties have the power . . . of election to do so, to avoid the legal relations created by the contract, or by ratification of the contract to extinguish the power of avoidance' "]; *Estate of Stephens* (2002) 28 Cal.4th 665, 673 [defining " '[r]atification' " as " 'the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person' "].) Taptelis has neither argued nor explained why SLS's execution of the substitution as Homeward's attorney-in-fact could, if SLS had not in fact been delegated such authority by Homeward, render the substitution void rather than voidable. Thus, Taptelis lacks standing to press this challenge to the substitution. The legal effect

16

of the substitution was not disputable, so the trial court did not err in deriving its legal effect from its legally operative language.[8]

Having rejected Taptelis's contentions regarding the substitution, we conclude that the trial court could properly take judicial notice of the legally operative language in the substitution to conclude that it had the legal effect of substituting Quality for Stewart Title as trustee. (See *Julian*, *supra*, 62 Cal.App.5th at p. 600.)

Taptelis contends that it was improper for the trial court to take judicial notice of the legal effect of the notice of default or trustee's deed. To the extent Taptelis's arguments depend on his challenges to the assignment or substitution, we reject them. But Taptelis also contends that the notice of default was void because the accompanying "declaration" was "full of conclusory statements" belied by Taptelis's claim that the notice of default was recorded while his application for a loan modification was under consideration. We understand Taptelis to mean that the attached "California declaration of compliance" (some capitalization omitted) required by subdivision (c) of Civil Code section 2923.55 contains a false representation that 30 or more days had passed since the servicer's diligent effort to contact Taptelis. Taptelis, however, does not address whether the alleged factual dispute could impact the legal effect of the notice of default. Thus, he has not satisfied his obligation, as an appellant challenging the trial court's judgment, to supply some cogent argument supported by legal analysis to demonstrate error. (See *United Grand*, *supra*, 36 Cal.App.5th at pp. 146, 153.) Moreover, we note the statutory remedies for a "material violation" of Civil Code section 2923.55—injunctive relief before recordation of the trustee's deed upon sale, and actual economic damages thereafter. (See Civ. Code, §§ 2923.55, subds. (c), (f), 2924.12, subds. (a)-(c), (e).)

---

[8] The allegedly missing evidence here—proof that SLS was Homeward's attorney-in-fact—is materially different from the missing evidence in *Herrera*—chain-of-title documents showing that the entity purportedly transferring its beneficial interest had any such interest to transfer. (See *Herrera*, *supra*, 196 Cal.App.4th at pp. 1374–1375.)

17

Given the statutory scheme, it is not apparent that the alleged violation of section 2923.55 would, if proven postforeclosure, entitle Taptelis to void the notice of default, unwind the foreclosure sale, and regain title.

Having rejected Taptelis's contentions regarding the notice of default and trustee's deed, we conclude that both documents were judicially noticeable for their legally operative language. (See *Julian*, *supra*, 62 Cal.App.5th at p. 600.)

For these reasons, we conclude that judicial notice of the recorded documents was sufficient to establish that the proper entities recorded noticed the default and recorded the trustee's deed. Moreover, the legal effect of the recitals in the trustee's deed is to create a rebuttable presumption of compliance "with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof." (§ 2924, subd. (c).) Accordingly, the judicially noticed documents were collectively sufficient to establish a rebuttable presumption of compliance with Civil Code section 2924. (See § 2924, subd. (c); *Royal Thrift*, *supra*, 123 Cal.App.4th at p. 32.) The trial court did not err in relying on that presumption to establish compliance with Civil Code section 2924, as an element necessary to satisfy section 1161a, subdivision (b)(3).

**4.** ***The Judicial Notice Procedure***

Taptelis contends that the trial court should have denied Homeward's request for judicial notice because Homeward did not afford him with adequate notice that it would be asking the trial court to judicially notice the recorded documents at trial, either at all or for their legal effect. Taptelis asserts that the first time he was given notice that Homeward was seeking judicial notice of the recorded documents was at trial, and from then he should have been given a reasonable time—five days—to brief his opposition to judicial notice in writing. Moreover, Taptelis contends that even at trial he was not advised that judicial notice of the legal effect of the documents would be sought or given

18

an adequate specification of the statutory grounds on which judicial notice was requested. Taptelis contends that procedural errors denied him due process and are reversible per se. We conclude, instead, that Taptelis was required but failed to show that the alleged procedural errors were prejudicial.

Evidence Code section 455, subdivision (a) requires a trial court contemplating judicial notice of any matter "of substantial consequence" to "afford each party reasonable opportunity" to respond with information relevant to "the propriety of . . . judicial notice" and "the tenor of the matter to be noticed." A judge who discovers only after submission of a cause that a matter should be judicially noticed " 'may . . . order the cause to be reopened for the purpose of permitting the parties to provide . . . information concerning the matter.' " (*Estate of Russell* (1971) 17 Cal.App.3d 758, 766; see also *Estate of Nicholas* (1986) 177 Cal.App.3d 1071, 1090 (*Nicholas*).)

Two weeks before trial, Homeward served its trial brief, exhibit list, and witness list. Although there were 17 documents on the exhibit list, including the chain of title documents, there was only one witness on the witness list—a process server who was expected to testify about the notice to quit. On the same day, Taptelis filed his trial brief, the final section of which was his "Objection to Plaintiff's Exhibits by Judicial Notice," (boldface omitted) where he argued that Homeward must lay the foundation for every document it relied on and could not secure judicial notice of disputed hearsay statements in judicially noticed documents.

At trial, Taptelis objected to Homeward's first request for judicial notice on the ground that no written request for judicial notice had been filed and argued that Evidence Code section 455 required the trial court to allow him to brief his objections to the specific request. In the ensuing discussion, Homeward clarified that it would be requesting judicial notice of the recorded chain of title documents under Evidence Code sections 452 and 453. Taptelis responded that he "agree[d] with judicial notice" of the

19

date of recordation but disputed the propriety of "judicial notice of any of the facts because all of the facts in any document that exists are all hearsay." After the court distinguished taking "judicial notice of a document" from "taking the statements within that document . . . as evidence" Taptelis renewed his request for time to file a brief under Evidence Code section 455. Homeward objected that Taptelis already had fair notice, as shown by his trial brief disputing the propriety of judicial notice. The trial court ruled that Taptelis had a "reasonable opportunity" to address the request for judicial notice orally at the bench trial. After Taptelis renewed his challenges to judicially noticing facts within the document, Homeward clarified that it was asking for judicial notice of "[j]ust the document," and the trial court announced it would take judicial notice of only the name of the document and the date of the document. In its written order, the trial court clarified that in taking judicial notice of the documents, and not the hearsay information they contained: It took judicial notice of the recordation, the date the document was executed and recorded, the parties to the documented transaction, and the documents' legally operative language. From those facts, the trial court inferred the legal effect of the documents.

We are not persuaded that any defect in the judicial notice procedure—whether it be (1) failing to afford Taptelis a reasonable opportunity to meet the request before the cause was submitted under Evidence Code section 455; or (2) failing to afford Taptelis an opportunity to be heard after deciding to modify its initial ruling regarding the tenor of the matter to be noticed—was prejudicial. First, it is apparent from the record that Taptelis anticipated Homeward's request for judicial notice and was prepared to meet it on the merits. Second, Taptelis has not revealed what different or additional arguments he would have raised in the trial court had he been given a more complete opportunity to respond. (See *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 698 [in the summary judgment context, encouraging litigants to explain what "prejudice has been suffered by reason of defective service and/or inadequate notice"].) Third, to the extent he may have

20

raised the legal contentions he has raised on appeal, we have rejected each of them. At bottom, the trial court made a legal determination that it was appropriate to consider the legally operative language in the recorded documents on a request for judicial notice. That legal determination was correct—Taptelis's additional arguments would not have changed that. Accordingly, we are satisfied, beyond a reasonable doubt, that the alleged improprieties in the judicial notice process did not contribute to the verdict obtained—the trial court would have reached the same result on the request for judicial notice even with the additional procedures Taptelis contends were required.[9]

Nor are we persuaded that the alleged procedural defects constitute structural error. Taptelis never directly argues as much: he argues instead that the taking of judicial notice amounted to a denial of constitutional due process such that the asserted error could not be harmless. But even constitutional violations can be harmless, provided they are not structural errors. (*Cassim*, *supra*, 33 Cal.4th at p. 801, fn. 6.) A structural error is a structural defect in the trial mechanism that defies evaluation for harmlessness. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1108.) Consistent with the foregoing harmlessness analysis, the alleged errors raised here do not belong in that class. (See generally *Nicholas*, *supra*, 177 Cal.App.3d at p. 1090 [conducting harmlessness analysis assuming trial court improperly took judicial notice of court records].)

---

[9] Taptelis argues that the procedural issues here constitute a violation of his due process rights under the federal constitution. If he is correct, then the error may be harmless only if the beneficiary of the error proves beyond a reasonable doubt that it did not contribute to the verdict obtained. (See *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801, fn. 6 (*Cassim*); *Chapman v. California* (1967) 386 U.S. 18, 24.) If he is not, the error may be harmless if it is not reasonably probable that Taptelis would have achieved a more favorable result in the absence of the error. (See *Cassim*, *supra*, 33 Cal.4th at pp. 801–802.) To the extent a lower threshold for harmlessness should apply here, we would find that lower threshold met as well.

21

**D.**     *"Duly Perfected" Title*

Taptelis contends that Homeward could not carry its burden of showing that it had duly perfected title under the sale within the meaning of section 1161a, subdivision (b)(3) because it was required to prove that the title was free of litigation, but the sale was conducted with pending wrongful foreclosure litigation alleging dual tracking in violation of the HBOR and a recorded lis pendens predicated on that suit. In Taptelis's view, the trial court prejudicially erred by excluding, through an in limine ruling and sustained objections at trial, his evidence of the lis pendens, the wrongful foreclosure suit, and the alleged dual tracking, all of which would have shown that Homeward had not duly perfected title. In Homeward's view, it demonstrated duly perfected title by making a prima facie showing of the propriety of the foreclosure proceedings and its title, culminating in the recordation of the trustee's deed.[10]

The admission or exclusion of evidence on relevance grounds is typically subject to the trial court's broad discretion. (See *People v. Waidla* (2000) 22 Cal.4th 690, 717–718 [abuse of discretion standard applies where admissibility turns on the relevance of the evidence]; *People v. Navarro* (2021) 12 Cal.5th 285, 327.) But "[a]n order that implicitly or explicitly rests on an erroneous reading of the law necessarily is an abuse of discretion." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.)

---

[10] In his opening brief, Taptelis argued that the trial court "prejudicial[ly]" erred by "prohibiting" him "from introducing his senior litigation or lis pendens" to show that the recording of the trustee's deed "did not perfect title" such that the unlawful detainer was improper under *Dr. Leevil* for lack of perfect title. Mischaracterizing this argument, Homeward responded that the "closest" Taptelis came to arguing that Homeward's title was imperfect was "suggest[ing] that the mere existence of the [w]rongful [f]oreclosure [c]ase . . . preclude[d] [a] finding of 'perfect title.' " Homeward ignored Taptelis's reliance on *Dr. Leevil*. In supplemental briefing, Homeward contends that *Dr. Leevil* does not require post-sale expungement of any properly recorded pre-sale lis pendens to duly perfect title under a nonjudicial foreclosure sale.

Addressing the legal conclusion underpinning the trial court's evidentiary ruling, we hold that any error in denying Taptelis the opportunity to introduce evidence about the alleged HBOR violations, the wrongful foreclosure suit, and the lis pendens was harmless.[11]  The lis pendens was void for lack of a proof of service so it did not cloud Homeward's title under the sale.[12]  The prior wrongful foreclosure suit did not of itself cloud Homeward's title under the sale.  Because no cloud on title has been identified, Homeward's recordation of the trustee's deed was the last step to duly perfect title under the sale within the meaning of section 1161a, subdivision (b)(3).

**1.**     ***General Principles Regarding the Scope of Section 1161a(b)(3)***
           ***Proceedings***

"Unlawful detainer actions are authorized and governed by Code of Civil Procedure section 1161 et seq.  'The statutory scheme is intended and designed to provide an expeditious remedy for the recovery of possession of real property.' " (*Coyne v. De Leo* (2018) 26 Cal.App.5th 801, 805 (*Coyne*).)  " 'It has long been recognized that the unlawful detainer statutes are to be strictly construed and that relief not statutorily authorized may not be given due to the summary nature of the proceedings.  [Citation.] The statutory requirements in such proceedings " 'must be followed strictly . . . .' " ' " (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 480.)  Because the remedy of unlawful detainer is

---

[11] Although the trial court initially appeared to grant Homeward's motion in limine to exclude only evidence of the Homeowner Bill of Rights violations alleged in the wrongful foreclosure action, the court during trial sustained Homeward's objection to evidence of the wrongful foreclosure complaint and lis pendens themselves, based on the in limine ruling.  We understand the trial court's omission from its written decision of Taptelis's argument that Homeward had not "duly perfected" title as an implicit conclusion that recordation of the trustee's deed duly perfected Homeward's title.

[12] We do not address whether a valid lis pendens would have prevented Homeward's perfection of title under the sale within the meaning of section 1161a, subdivision (b)(3).

" 'purely statutory in nature, it is essential that a party seeking the remedy bring [it]self clearly within the statute.' " (*Ibid*.)

" 'Unlawful detainer actions are . . . of limited scope, generally dealing only with the issue of right to possession and not other claims between the parties, even if related to the property.' " (*Coyne*, *supra*, 26 Cal.App.5th at p. 805; see also *Vella v. Hudgins* (1977) 20 Cal.3d 251, 255 (*Vella*); *Malkoskie v. Option One Mortgage Corp.* (2010) 188 Cal.App.4th 968, 973 (*Malkoskie*).)  As a result, an unlawful detainer judgment usually has "limited res judicata effect and will not prevent one who is dispossessed from bringing a subsequent action to resolve questions of title." (*Vella*, *supra*, 20 Cal.3d at p. 255.)

Section 1161a is a "qualified exception" to the general rule against resolution of claims other than possession, in that it "provides for a narrow and sharply focused examination of title." (*Vella*, *supra*, 20 Cal.3d at p. 255.)  Section 1161a, subdivision (b) "enumerate[s] five 'cases' in which its substantive provision applies." (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 478.)  "Section 1161a[, subdivision] (b)(3) is one of those 'cases.' " (*Id*. at p. 479.)

"Where the property has been sold in accordance with [s]ection 2924 of the Civil Code, under a power of sale contained in a deed of trust executed by [the holdover possessor], or a person under whom such person claims," a plaintiff seeking a judgment of unlawful detainer must establish that "the title under the sale has been duly perfected." (§ 1161a, subd. (b)(3); *Dr. Leevil*, *supra*, 6 Cal.5th at p. 479; see also *id*. at p. 481; *Vella*, *supra*, 20 Cal.3d at p. 255; *Malkoskie*, *supra*, 188 Cal.App.4th at pp. 974–976.)  " 'Title is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt.' " (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 479.)

Because they involve a limited examination of title, section 1161a title determinations may bar "subsequent fraud or quiet title suits founded upon allegations of

24

irregularity in a trustee's sale." (*Vella*, *supra*, 20 Cal.3d at p. 256.) But they may not bar other suits challenging activities not directly connected with the conduct of the sale. (See *Gonzalez v. Gem Properties, Inc.* (1974) 37 Cal.App.3d 1029, 1035–1037.)

In *Cheney v. Trauzettel* (1937) 9 Cal.2d 158, an unlawful detainer defendant "answered and cross-complained, setting up a claim of title and several other defenses, including the pendency of a quiet title suit between the parties involving the same property. The trial court . . . struck out the cross-complaint and special defenses, and gave judgment for plaintiff." (*Id*. at p. 159.) Affirming the judgment, the court explained that the purchaser was required to "prove his acquisition of title by purchase at the sale; but it is only to this limited extent, as provided by the statute, that the title may be litigated in" an unlawful detainer proceeding under section 1161a. (*Ibid*.) The court explained that "alleged equitable grounds of attack on plaintiff's title have no place in the present summary proceeding, for if such issues are permissible, the proceeding entirely loses its summary character." (*Id*. at p. 160.) Reasoning that "the plaintiff need only prove a sale in compliance with the statute and deed of trust, followed by purchase at such sale, and the defendant may raise objections only on that phase of the issue of title," the court held that "[m]atters affecting the validity of the trust deed or primary obligation itself, or other basic defects in the plaintiff's title, are neither properly raised in this summary proceeding for possession, nor are they concluded by the judgment." (*Ibid*.)

More recently, the *Dr. Leevil* court analyzed the statutory requirements under section 1161a, subdivision (b). The *Dr. Leevil* court explained that " '[t]itle is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt . . . [citation], *which includes good record title* [citation], but is not limited to good record title, as between the parties to the transaction. . . . The court in an unlawful detainer [action] . . . has jurisdiction to determine the validity of such defenses.' " (*Dr.*

25

*Leevil*, *supra*, 6 Cal.5th at p. 479.) The *Dr. Leevil* court held that title is not perfected until, "among other things," the trustee's deed is recorded. (*Ibid.*)

The *Dr. Leevil* court quoted *Cheney* for the limited scope of an unlawful detainer action. (*Dr. Leevil*, *supra*, 6 Cal.5th at p. 483.) But the *Dr. Leevil* court highlighted that limited scope as a reason to adopt a rule requiring a new owner to perfect title before serving its three-day notice: The unlawful detainer defendant's "ability to challenge [plaintiff's] claim of ownership was limited, and the Court of Appeal erred in suggesting otherwise. And more generally, if the cloud on a new owner's title concerns an issue that cannot be litigated in an unlawful detainer action, and if, as the Court of Appeal concluded, a new owner can serve a three-day written notice to quit before perfecting title, then a holdover possessor of the property would have no choice but to vacate the property upon receipt of the notice. It is possible, however, that the cloud on the title would prevent the title from ever being perfected, in which case the holdover possessor would have vacated the property unnecessarily." (*Id.* at p. 484.)

Thus, both *Cheney* and *Dr. Leevil* agree that the scope of an unlawful detainer action is limited. But there is tension between *Cheney* and *Dr. Leevil* as it relates to possession of the property during a title dispute. Under the *Cheney* approach, the unlawful detainer remedy should be available to enable a buyer to take possession before resolution of a title dispute that cannot properly be resolved in the unlawful detainer itself. Under the *Dr. Leevil* approach, at least those clouds on title that prevent the title under the sale from being perfected must be resolved before the buyer can initiate unlawful detainer proceedings possession.[13]

---

[13] To the extent Homeward contends that courts are "prohibited" by "all California authorities" (boldface and underlining omitted) from "requir[ing] the unlawful detainer plaintiff to litigate" defects in title that cannot be raised in an unlawful detainer proceeding "before being able to proceed in the unlawful detainer," we disagree. (Compare *Asuncion v. Superior Court* (1980) 108 Cal.App.3d 141, 146–147 (*Asuncion*) [holding that due process required that "homeowners . . . [be] permitted to raise the

## 2. *Significance of Taptelis's Lis Pendens*

As Homeward has acknowledged, a properly recorded lis pendens clouds title.[14] (See *Integrated Lender*, *supra*, 22 Cal.App.5th at p. 877.)  But Homeward contends that the lis pendens here is ineffective because Taptelis failed to include a proof of service. (See § 405.23; *McKnight v. Superior Court* (1985) 170 Cal.App.3d 291, 295, 297, 300–303 [lis pendens properly expunged for technical violations, including failure to record proof of service].)  Homeward argues that Taptelis's lis pendens consequently never clouded title.

Taptelis responds that even if the lis pendens were void for lack of a proof of service, it was still effective on any party who received actual notice.  Alternately, Taptelis contends that Homeward waived any right to challenge the validity of the lis

---

affirmative defenses which if proved would maintain their possession and ownership," that "title to the property is inevitably in issue in this unlawful detainer action," and suggesting stay and consolidation to resolve fraud action implicating title before adjudication of unlawful detainer]; with *Kartheiser v. Superior Court* (1959) 174 Cal.App.2d 617, 618–623 [directing trial court to vacate order continuing unlawful detainer trial pending appeal of judgment allowing trustee's sale, on the ground the appeal would inordinately delay the unlawful detainer plaintiff's right to an early trial]; see also *Martin-Bragg v. Moore* (2013) 219 Cal.App.4th 367, 385, 387 [holding that trial court has the power to stay unlawful detainer proceeding or consolidate it with a pending action in which title is at issue "because a successful claim of title by the tenant would defeat the landlord's right to possession"].)

[14] Notice of a pending action, or a lis pendens, "may be recorded in an action . . . 'which would, if meritorious, affect . . . title to, or the right to possession of, specific real property.' " (*BGJ Associates, LLC v. Superior Court* (1999) 75 Cal.App.4th 952, 967; see also §§ 405.4, 405.20.)  The recording of the lis pendens " 'provides constructive notice of the litigation' " and " 'clouds title until the litigation is resolved or the lis pendens is expunged . . . . [Citation.]' [Citation.]  In other words, a party obtaining an interest in the property subsequent to the lis pendens . . . will be bound by the judgment in that action." (*Integrated Lender Services, Inc. v. County of Los Angeles* (2018) 22 Cal.App.5th 867, 877 (*Integrated Lender*); see also *Nunn v. JPMorgan Chase Bank, N.A.* (2021) 64 Cal.App.5th 346, 363; *Malcolm v. Superior Court* (1981) 29 Cal.3d 518, 523, fn. 2.)

27

pendens. (See *Biddle v. Superior Court* (1985) 170 Cal.App.3d 135, 136–138 (*Biddle*); see also *J&A Mash & Barrel, LLC v. Superior Court* (2022) 74 Cal.App.5th 1, 29 (*J&A Mash & Barrel*).)

We conclude that Taptelis's failure to secure recordation of the lis pendens with any proof of service rendered the lis pendens void, such that even if a valid lis pendens could cloud title under the sale, Taptelis's lis pendens did not.

Section 405.22 requires claimants to serve a copy of the lis pendens to "the parties to whom the real property claim is adverse and to all owners of record of the real property affected by the real property claim" prior to recordation of the lis pendens. Section 405.23 declares a lis pendens "void and invalid as to any adverse party or owner of record unless the" service requirements set forth in section 405.22 "are met for that party or owner and a proof of service in the form and content specified in [s]ection 1013a has been recorded with the" lis pendens.

In *Biddle*, the trial court expunged "a lis pendens for a technical defect in service, although the property owners had actual notice and had failed to raise the defect in two prior motions to expunge." (*Biddle*, *supra*, 170 Cal.App.3d at p. 136.) The *Biddle* court issued a peremptory writ directing the trial court to deny the motion to expunge. (*Id.* at p. 138.) The court explained that petitioners had "substantially complied with the service requirement and unquestionably conveyed prompt actual notice to the [property owners], thereby satisfying the purpose of the statute." (*Id.* at p. 137.) The court also explained that the property owners "waived any service defects by waiting more than a year to assert them," litigating "two motions to attack the substantive validity of the lis pendens without mentioning the defects in service" in the interim. (*Id.* at p. 138.)

After *Biddle* was decided, the Legislature adopted the current lis pendens statutes. (*J&A Mash & Barrel*, *supra*, 74 Cal.App.5th at p. 29.) A code comment explained that it was " 'not the intention of . . . section [405.23] to disapprove the principles of waiver applied in *Biddle*.' " (*Id.* at p. 24; see also *Carr v. Rosien* (2015) 238 Cal.App.4th 845,

28

854 (*Carr*); *Rey Sanchez Investments v. Superior Court* (2016) 244 Cal.App.4th 259, 264 (*Rey Sanchez*).)

Carr and *Rey Sanchez* interpreted *Biddle* to create a waiver exception to Code of Civil Procedure section 405.23, which may apply only if two conditions are met:  (1) the claimant substantially complied with the service requirement; and (2) the party seeking expungement waived any defects in service.  (See *Carr*, *supra*, 238 Cal.App.4th at p. 855; *Rey Sanchez*, *supra*, 244 Cal.App.4th at p. 264.)[15]

In *Carr*, the court held that Carr's lis pendens was ineffective as to Colón, a property owner, because Carr did not serve Colón, who did not receive actual notice of the lis pendens until after selling the property.  (*Carr*, *supra*, 238 Cal.App.4th at pp. 855–856.)  Moreover, "the fact that the lis pendens is 'void . . . as to' Colón would be cold comfort if it nevertheless prevented Colón from conveying good title to third parties." (*Id.* at p. 856.)  The court therefore concluded, "[A] lis pendens that is void as to one owner is also void as to that owner's transferees."  (*Id*. at pp. 856–857.)  Accordingly, the court held that Colón's deed to another party had priority over Carr's lis pendens.  (*Id*. at p. 857.)

The *Carr* court rejected Carr's argument that the void lis pendens provided constructive notice to subsequent purchasers until it was expunged.  (*Carr*, *supra*, 238 Cal.App.4th at p. 857.)  The court explained that the lis pendens need not be expunged to be void as to an unserved property owner and that a lis pendens void as to an

---

[15] *Carr* and *Rey Sanchez*, both of which were authored by the same justice, noted that the Legislature "explicitly approved of *Biddle's* waiver principle, but not its substantial compliance principle."  (*Rey Sanchez*, *supra*, 244 Cal.App.4th at p. 264.) Those courts "acknowledge[d] this could be read as a rejection of the idea that substantial, rather than strict, compliance with section 405.22 might suffice to prevent a lis pendens from being declared 'void and invalid' under section 405.23," but neither reached the issue.  (*Ibid*.)  Both decisions, however, distinguished *Biddle* on the ground that claimants in those cases failed to substantially comply with the service requirement. (*Carr*, *supra*, 238 Cal.App.4th at p. 855; *Rey Sanchez*, *supra*, 244 Cal.App.4th at p. 264.)

unserved party may be valid as to another party who was properly served. (*Ibid*.) Otherwise, an unserved owner bringing a successful motion to expunge the lis pendens would result in a windfall to the served owner (as to whom the lis pendens was valid). (*Ibid*.; but see *Rey Sanchez*, *supra*, 244 Cal.App.4th at p. 265 [directing the trial court to order expungement, "mindful that adverse consequences might flow if we ordered the expungement of a lis pendens that is valid against defendants just because it is invalid as to petitioner"].)

A third case, *J&A Mash & Barrel*, held that the claimant either actually or substantially complied with the service requirement. (*J&A Mash & Barrel*, *supra*, 74 Cal.App.5th at pp. 25–31.) In connection with its substantial compliance alternate holding, the court reasoned that substantial compliance was independently sufficient even without a waiver. (*Id*. at pp. 28–31.)

Here, Taptelis argues that he timely served Homeward with the lis pendens effecting actual notice, although he failed to record the proof of service when he recorded the lis pendens.[16] Whether or not Homeward received actual notice of the lis pendens, Homeward raised the failure to record a proof of service when it first moved to expunge the lis pendens more than a year after it was recorded.

---

[16] On Taptelis's request, we take judicial notice of an April 20, 2021 Taptelis Declaration and Homeward's April 28, 2022 motion to expunge the lis pendens, both filed in the wrongful foreclosure case, as relevant to Taptelis's waiver argument. Although appellate courts generally will consider only matters before the trial court at the time judgment was entered, we are satisfied that exceptional circumstances exist here, where the documents relate to Homeward's purported waiver of any defect in the lis pendens, raised for the first time in Homeward's petition for rehearing. (See generally *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2.) Our judicial notice does not extend to the truth of hearsay statements in the documents. (*In re Vicks* (2013) 56 Cal.4th 274, 314.) We deny Taptelis's November 7, 2023 request for judicial notice of documents relating to his substantive claims under the Homeowner Bill of Rights. We deny Homeward's March 20, 2024 request for judicial notice of the trial court's November 20, 2023 summary adjudication order in the wrongful foreclosure action.

We decline to hold that the failure to record a proof of service may be excused by actual service. Section 405.23 requires both service in compliance with section 405.22 and recordation of a proof of service. Were we to hold that satisfaction of only the first of these two requirements constituted substantial compliance, we would effectively rewrite the statute in excess of our authority. (See *City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617.)

Further, we hold that delay in seeking expungement of a lis pendens does not constitute waiver if the lis pendens is "void and invalid as to any adverse party or owner of record" (§ 405.23) because no proof of service was recorded. We find *Carr* persuasive in its holding that a lis pendens already void by operation of section 405.23 is ineffective even without expungement. (*Carr*, *supra*, 238 Cal.App.4th at p. 857.) That being so, inaction cannot alone effect a waiver. *Biddle* is distinguishable because the service issue was not raised until the third motion to expunge the lis pendens was filed. (See *id*. at p. 854 [discussing *Biddle*].)

We therefore conclude that the lis pendens Taptelis recorded before the nonjudicial foreclosure sale was void and invalid as to Homeward because Taptelis failed to record a proof of service. Consequently, the lis pendens did not cloud Homeward's title or otherwise impede the trial court's finding that Homeward duly perfected title under the sale. (See *Carr*, *supra*, 238 Cal.App.4th at pp. 855–857.)

**3.      *Significance of the Wrongful Foreclosure Litigation***

Under *Dr. Leevil*, "an owner that acquires title to property under a power of sale contained in a deed of trust must perfect title before serving the three-day written notice to quit required by . . . section 1161a[, subdivision] (b)." (*Dr. Leevil*, *supra*, 6 Cal.5th at pp. 484–485, italics omitted.) " 'Title is duly perfected when all steps have been taken to make it perfect, i.e., to convey to the purchaser that which he has purchased, valid and good beyond all reasonable doubt.' " (*Id*. at p. 479.) This includes good record title as between the parties to the transaction. (*Ibid*.) Dr. Leevil failed to perfect title before

31

serving the three-day notice because it had not yet recorded the instrument of sale (the trustee's deed). (*Id*. at pp. 479–480.) Dr. Leevil thus lacked good record title when it served the three-day notice.

Here, at least given the invalidity of the lis pendens, Taptelis has not directed our attention to any insufficiency in Homeward's showing that it had good record title after it recorded the trustee's deed. Accordingly, the barrier that precluded initiation of unlawful detainer proceedings in *Dr. Leevil* is not present here.

Taptelis contends that his wrongful foreclosure suit rendered Homeward's title imperfect because even without the lis pendens, Homeward had actual notice of the suit. To endorse Taptelis's contention would undermine the Legislature's intent to expedite postforeclosure unlawful detainer proceedings.

Upon the recordation of the trustee's deed, Homeward had good record title and could transfer good title to third parties. (See *Carr*, *supra*, 238 Cal.App.4th at pp. 856–857.) All steps had been taken to convey title to Homeward, valid and good beyond all reasonable doubt. (See *Dr. Leevil*, *supra*, 6 Cal.5th at p. 479.)

We do not read *Dr. Leevil* as suggesting that resolution of all pending litigation over the property is a prerequisite to the right of possession under section 1161a. At its core, the case is about whether the former owner could verify that the entity issuing the notice to quit was the buyer at the foreclosure sale and that the foreclosure sale had been perfected. (See *Dr. Leevil*, *supra*, 6 Cal.5th at pp. 482–483.) The court's broader discussion of perfection of title under the sale may be read to suggest that perfection of title under the sale requires resolution of clouds on title before the right to possession may be litigated. (See *id*. at p. 484; see also *Hocking v. Title Ins. & Trust Co.* (1951) 37 Cal.2d 644, 649, 652 [discussing perfection of title, including in language that is quoted in *Dr. Leevil*].) But although Taptelis continued to seek to unwind the foreclosure sale in litigation with Homeward, we do not think that Homeward's title under the sale

32

was cast into reasonable doubt by that litigation, when Taptelis did not properly record and maintain a valid lis pendens.

## E.    *Requests for Consolidation or Stay*

Taptelis contends that he was denied his constitutional right to due process by the trial court's refusal to stay the unlawful detainer action until after his consolidation motion could be heard and its failure to rule on his ex parte application for a stay of execution of judgment. Reviewing for abuse of discretion, (see *Bains v. Moores* (2009) 172 Cal.App.4th 445, 480 [stay]; *National Electric Supply Co. v. Mt. Diablo Unified School Dist.* (1960) 187 Cal.App.2d 418, 421 [consolidation]), we identify no prejudicial error.

### 1.    *Consolidation or Stay of Trial*

The purpose of Taptelis's requests for consolidation or stay was to delay resolution of the unlawful detainer action until after the resolution of the wrongful foreclosure action, such that Taptelis could retain possession of the property until the latter action was resolved. Taptelis has established no prejudice in the trial court's determination that Homeward was entitled to possession despite his pending wrongful foreclosure suit. We thus have no basis to discern prejudice in the trial court's deciding the unlawful detainer proceeding ahead of the wrongful foreclosure action.

*Asuncion*, despite Taptelis's reliance, does not compel a different result. There, Financial "loaned the Asuncions about $4,800 for 45 days, in return for real property having an equity in excess of $20,000. It [was] alleged such loan may be usurious, as well as fraudulent and in violation of a number of laws." (*Asuncion*, *supra*, 108 Cal.App.3d at p. 144.) The court noted generally that a summary proceeding "is not a suitable vehicle to try complicated ownership issues involving assertions of fraud and deceptive practices." (*Ibid*.) But determining that the Asuncions were entitled to defend the unlawful detainer action based on their claims of fraud, the court suggested stay or consolidation to facilitate the adjudication of those defenses. (*Id*. at pp. 146–147.) Here,

33

however, we have determined that the pendency of Taptelis's wrongful foreclosure action did not in itself prevent Homeward from obtaining possession under section 1161a, subdivision (b)(3).

### 2.  *Stay of Execution of Judgment*

A defendant's appeal from a judgment of unlawful detainer does not automatically stay proceedings upon the judgment.  "Stay of judgment shall be granted when the court finds that the moving party will suffer extreme hardship in the absence of a stay and that the nonmoving party will not be irreparably injured by its issuance.  If the stay is denied by the trial court, the defendant may forthwith file a petition for an extraordinary writ with the appropriate appeals court."  (§ 1176, subd. (a).)

Taptelis sought a stay of the judgment by ex parte motion; when the trial court entered judgment without ruling on the ex parte, he petitioned this court for stay of judgment; and we denied the petition.

Taptelis now argues that the trial court abused its discretion by failing to issue an order expressly addressing his ex parte motion and denied him the right to be heard.  Having exercised his right to challenge the implicit denial of his motion by petition to this court, Taptelis has not articulated why the trial court was required to grant the ex parte motion or why its failure to do so bears on the merits of his appeal from the judgment itself.  We see no basis for relief on these procedural grounds.

### III.    DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to Homeward.

34

_____
LIE, J.

WE CONCUR:


_____
GREENWOOD, P. J.


_____
GROVER, J.


*Homeward Opportunities Fund I Trust 2019-2 v. Taptelis*
H049791